## State of Connecticut *v.* Gregg Booker (9574)

O'Connell, Freedman and Cretella, Js.

Argued April 7—decision released June 23, 1992

*Jerome J. Rosenblum,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom was *James Bernardi,* assistant state's attorney, and, on the brief, *Eugene Callahan,* state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-277 and two counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The defendant claims that the trial court (1) lacked jurisdiction to try him on the two counts of manslaughter in the first degree because the murder counts with which he was originally charged were dismissed with prejudice at the probable cause hearing, (2) improperly denied his motion for acquittal on one of the two counts of manslaughter in the first degree, and (3) improperly charged the jury on the issue of causation with respect to both manslaughter counts. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On July 18, 1988, Lamont Oliver, the defendant and two or three others[2] drove from New Haven to Roodner Court, a housing project in Norwalk, to settle a dispute regarding the sale of narcotics. They arrived at the housing project at approximately 11 p.m. and approached an open area between building 13-14 and building 19-20, where they paused at the top of a stairwell that overlooked the open area. Between thirty and 100 people were gathered in the parking lots and

[1] The defendant was also charged with attempt to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49; however, he was acquitted of this charge.

[2] There was conflicting testimony as to whether Oliver was accompanied by two or three others. It is only relevant, however, that he was accompanied by the defendant.

courtyard below. Oliver carried an assault rifle, which he had wrapped in his jacket. The defendant had a handgun, either a .38 or a .357 caliber, under his shirt.

Oliver spotted Michael "Fat Mike" Morris and Johnny Brown, a resident of Roodner Court and a convicted narcotics dealer, in the crowd. Brown and Morris were standing across the parking lot from Oliver and the defendant. Seeing Oliver unwrap his weapon, Brown stated to Morris, "Let's get out of here." They both ran through the crowd as they tried to get away.

Oliver fired shots in the air and the defendant took his handgun out of his shirt. Oliver fired in the direction of Brown and Morris as they ran for cover. He and his accomplices, including the defendant, thereafter began firing into the open area at random for approximately one and one-half minutes as they descended the stairs. Oliver, the defendant and the others with them then turned to leave, and two men in the area below, using handguns, not long barreled weapons, fired back at them as they retreated.

As a result of this gunfire, Everne Johnson, a pregnant woman who was sitting on a bench in front of building 20, was struck in the back by a bullet and died shortly thereafter. In addition, Sean Clemmons, another resident of Roodner Court, was fatally shot in the head.

A bullet fragment recovered during the autopsy performed on Johnson was part of a .22 caliber high power center fire cartridge projectile, which was consistent with the type of ammunition fired from a gun designed to fire .223 caliber rounds. Cartridges of .223 caliber are used in many long guns and rifles such as an M-16, a Chinese version of the AK-47, or an AR-15. The jury could have found that the bullet that killed Johnson had been fired from an AK-47, and that the bullet that killed Clemmons was a .38 caliber which could have been fired from either a .38 or a .357 handgun.

# I

As a result of the deaths of Johnson and Clemmons, the defendant and two others were each charged with three counts of murder,[3] which required that a probable cause hearing be held prior to their prosecution. General Statutes § 54-46a. During the course of the probable cause hearing, the state announced to the trial court that "after speaking with various witnesses today, and reviewing the evidence up to this point, the state has decided to substitute manslaughter in the first degree charges charging reckless conduct." The state filed substitute informations charging, inter alia, manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). Thereafter, there was discussion between the court, the various defense counsel and the state, both on the record and in chambers, regarding the possibility that the state might reinstitute the murder charges. To allay such possibility, the state indicated that it did not intend to reinstitute the murder charges. The state then moved to have them dismissed "with prejudice" and to proceed with the manslaughter charges. The trial court granted the state's motion, dismissed the murder charges "with prejudice," vacated the prior pleas and put the three defendants, including Booker, to plea on the substitute information, to which the defendant pleaded not guilty to all charges, including the manslaughter counts.[4] The defendant was subsequently convicted, after a jury trial, of both manslaughter counts. It was the granting of the state's

---

[3] One of the original three counts of murder pertained to the unborn child of Everne Johnson. A charge of manslaughter in the first degree was substituted along with the other two charges but apparently was never pursued at trial.

[4] The relevant dialogue between the trial court, counsel for one of Booker's codefendants and the state's attorney was as follows:

"State's Attorney: Yes, Your Honor. The issue that was raised here was whether or not the state intended to re-charge these murder charges. And

motion to dismiss the murder charges "with prejudice" that the defendant claims deprived the trial court of jurisdiction to proceed with the charges of manslaughter in the first degree.

We must first determine the precise claim of the defendant. Initially, the defendant, in his brief, claimed that the dismissal with prejudice deprived the court of *personal* jurisdiction. At oral argument before this court, however, the defendant made it clear that he had abandoned his claim of lack of personal jurisdiction and was not claiming double jeopardy. What he does claim, for the first time at oral argument before this court, is that the granting of the motion to dismiss the murder charges "with prejudice" deprived the trial court of *subject matter* jurisdiction of the manslaughter charges. This claim is without merit.

The defendant never raised the issue of subject matter jurisdiction during the probable cause hearing, prior to or during the trial to the jury, or in his brief to this court. The first mention of subject matter jurisdiction

the state has made the representation that it does not. And therefore the state will move to dismiss its murder charges, and reinstitute the manslaughter charges.

&ast; &ast; &ast;

"Defense Counsel: I take it the motion is being made by the state with prejudice.

&ast; &ast; &ast;

"State's Attorney: Yes, Your Honor.

"The Court: Okay. Prior pleas and elections have been vacated. The state's motion to dismiss . . . three counts of murder with regard to Mr. Booker, motions to dismiss are granted. The state's proceeding on substitute information—

"State's Attorney: Charging three counts of manslaughter, Your Honor.

"The Court: In the first degree in violation of § 53a-55 (a) (3), the gentlemen are now ready to be put to plea.

"The Court:—Booker, the charge of manslaughter in the first degree, three counts, in violation of § 53a-55 (a) (3), how do you plead?

"Mr. Booker: Not guilty."

was in oral argument to this court. We address the issue, however, because "[u]nlike jurisdiction over the person, subject matter jurisdiction cannot be created through consent or waiver. . . . Once the question of lack of jurisdiction is raised, it must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case. . . ." (Citations omitted; internal quotation marks omitted.) *Vincenzo* v. *Warden,* 26 Conn. App. 132, 135, 599 A.2d 31 (1991).

"Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. Such jurisdiction relates to the court's competency to exercise power, and not to the regularity of the court's exercise of that power." (Citations omitted; internal quotation marks omitted.) *Castro* v. *Viera,* 207 Conn. 420, 427, 541 A.2d 1216 (1988).

In the matter at hand there is no question that the trial court had the power to hear and determine criminal matters, which is "the general class to which the proceedings in question belong." Id.; see also *State* v. *Carey,* 222 Conn. 299, 305–306, 610 A.2d 1147 (1992). The trial court had "the authority to adjudicate [this] particular type of legal controversy." Id. The dismissal with prejudice entered by the trial court at the probable cause hearing, therefore, could not have divested the court of subject matter jurisdiction over the manslaughter charges.

A dismissal with prejudice may operate to preclude the state from seeking a conviction of any lesser included crime encompassed by the information being dismissed. See *State* v. *Morrill,* 193 Conn. 602, 612, 478 A.2d 994 (1984). It is important to distinguish, how-

ever, between a lack of subject matter jurisdiction and a possible defense or bar to the prosecution of a particular charge. More important for the present case is that a defense or bar to prosecution, such as a lack of personal jurisdiction, must be affirmatively raised by the defendant prior to trial or his right to its protection is waived. Practice Book §§ 808, 810, 811 and 815; *State* v. *Vincent,* 194 Conn. 198, 201–204, 479 A.2d 237 (1984).[5] A claim of a lack of subject matter jurisdiction, on the other hand, cannot be waived and may be raised at any time. *Vincenzo* v. *Warden,* supra. As we have determined that the defendant's claim is not properly one of subject matter jurisdiction and because it was not raised at any time prior to oral argument before us, it is considered waived.[6] Additionally, at oral argu-

[5] "Section 815 (4) provides that questions concerning the jurisdiction of the court over the defendant may be raised by a motion to dismiss prior to trial. Section 808 declares that a pretrial motion is the exclusive means of raising such a defense if it is capable of determination prior to trial. Under § 811, all pretrial motions must be made not later than ten days after entry of a plea, or 'for good cause shown, at such later time as the judicial authority may fix.' Finally, § 810 provides that failure to abide by these rules constitutes a waiver of defenses or objections required to be raised before trial, such as 'the absence of jurisdiction of the court over the defendant' referred to in § 815 (4)." *State* v. *Vincent,* 194 Conn. 198, 201–202, 479 A.2d 237 (1984).

[6] We do not mean to imply that such a defense or bar to prosecution in fact existed on the facts of the present case. The trial court's characterization of the action taken by it as a dismissal with prejudice is not necessarily dispositive of the effect to be given to such action. This court may make its own inquiry into the action of the trial court in the context in which it occurred in order to determine the effect of such action. *State* v. *Paolella,* 210 Conn. 110, 122, 554 A.2d 702 (1989). It is clear from an examination of the proceedings at the probable cause hearing that what the defendant was seeking was an assurance that the state would not reinstate the murder charges. He was at all times completely aware that the state intended to proceed on the charges of manslaughter in the first degree and in fact the substitute information was filed before any action was taken by the trial court. Immediately after the trial court dismissed the murder charges, the defendant was put to plea on the manslaughter charges. It cannot reasonably be said that the trial court, by its actions, intended to preclude the state from pursuing any further charges against the defendant other than murder.

ment before us, the defendant expressly waived or abandoned any claim other than a lack of subject matter jurisdiction.

## II

The defendant next claims that, after the close of the state's case-in-chief, the trial court improperly denied his motion for judgment of acquittal. The defendant makes this claim only as to the manslaughter charge relating to the death of Johnson.[7] He argues that because there was evidence of return gunfire, and because the information required the state to prove that the gunfire of the defendant or his companions caused the victim's death, as opposed to the return gunfire from others in the courtyard, a reasonable doubt existed as to the cause of the victim's death. The defendant argues, therefore, that the jury could not have reasonably concluded, on the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence with respect to this particular victim established his guilt beyond a reasonable doubt.

"Before we can reach the merits of the defendant's challenge to the sufficiency of the state's case, we must determine whether such a claim is reviewable at all, in light of the defendant's introduction of evidence in his own behalf . . . ." *State* v. *Rutan,* 194 Conn. 438, 440, 479 A.2d 1209 (1984). "Under the waiver rule, when a motion for acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without foregoing the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if con-

---

[7] General Statutes § 53a-55 (a) provides: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

victed, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto. The defendant then runs the risk that the testimony of defense witnesses will fill an evidentiary gap in the state's case." Id.; *State* v. *Kari,* 26 Conn. App. 286, 291, 600 A.2d 1374 (1991).[8]

The defendant in this case elected to present a defense. We will review the evidence, therefore, in its entirety. "It is well established that in reviewing a claim of insufficient evidence, a two-part inquiry is undertaken. 'We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct.' (Citations omitted.) *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985). Findings of fact that are consistent with guilt are afforded great deference unless they are improbable and unconvincing. *State* v. *Osman,* 218 Conn. 432, 437, 589 A.2d 1227 (1991)." *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391 (1992).

Keeping in mind that the defendant's claim of insufficient evidence is limited to the death of Johnson only,

---

[8] We recognize that our Supreme Court has acknowledged the growing criticism of the application of the waiver rule and the implications it may have on a criminal defendant's constitutional rights. *State* v. *Simino,* 200 Conn. 113, 118 n.5, 509 A.2d 1039 (1986); *State* v. *Lizzi,* 199 Conn. 462, 464–65, 508 A.2d 16 (1986); *State* v. *Rutan,* 194 Conn. 438, 444, 479 A.2d 1209 (1984); *State* v. *Duhan,* 194 Conn. 347, 352, 481 A.2d 48 (1984). Because, the waiver rule is still the prevailing law of this state, we apply it in this case.

we will limit our discussion to the evidence presented regarding the facts and circumstances surrounding her death. Johnson was sitting on a bench in front of building 20 when the shooting began. She was struck in the back by a single bullet. The initial targets of Oliver's gunfire were Morris and Brown, who ran directly past Johnson in an effort to seek cover when the shooting began. Oliver and his companions fired shots into the courtyard for approximately one and one-half minutes.

An autopsy revealed that the fatal bullet was a .22 high power center fire cartridge projectile. The state's ballistics expert testified that the bullet was consistent with ammunition fired from a gun designed to fire .223 rounds, usually long barreled guns, and rarely handguns. He further testified that the bullet found in Johnson could have been fired from an M-16, a Chinese version of the AK-47, or an AR-15. In addition, the defendant presented a ballistics expert who acknowledged that an AK-47 could have fired the bullet that killed Johnson.

Oliver testified, albeit on behalf of the defendant, that he had used an AK-47. He was, therefore, the only person at the scene who was firing a long barreled weapon, and thus the most likely person to have fired the fatal shot. The state, in rebuttal, also presented the testimony of Detective James Saraceni, who had interviewed Oliver during the police investigation of the shooting. Saraceni testified that Oliver had told him that he had been firing at someone known as "Fat Mike," who ran by building 20 near the place where Johnson was sitting. Saraceni also testified that Oliver told him that the weapon he used during the shooting used .223 calliber ammunition. Finally, he testified that Oliver admitted to him that it appeared that his bullet had killed Johnson.

From the evidence presented and the inferences reasonably drawn therefrom, we cannot say that the jury could not reasonably have found that the defendant was guilty beyond a reasonable doubt of manslaughter in the first degree regarding the death of Johnson. The jury could reasonably have concluded beyond a reasonable doubt that, when Oliver, who had the only long barreled weapon at the scene, was shooting at Brown and Morris, one of his bullets struck and killed Johnson. This conclusion is further supported by the fact that those who returned gunfire at Oliver, the defendant and the others were between the defendant and Johnson, and therefore Johnson was not in their line of fire. This conclusion negates the inference raised by the defendant that Johnson was killed by the return fire of others not associated with him and Oliver.[9] It was reasonable for the jury to conclude that the defendant aided Oliver, and, therefore, to find that the defendant is guilty of manslaughter as charged. Despite the lack of direct evidence, a conclusion of guilt may be premised on the cumulative effect of the evidence presented and the inferences reasonably drawn therefrom. *State* v. *Weinberg,* 215 Conn. 231, 253, 567 A.2d 1237 (1989). In addition, although there was conflicting testimony, "we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." *State* v. *Henning,* 220 Conn. 417, 420, 599 A.2d 1065 (1991).

### III

The defendant's final claim is that the trial court improperly broadened the state's theory of liability and diluted the state's burden of proof. Specifically, he claims that the trial court misled the jury into believing that it could find the defendant guilty even if it con-

---

[9] There was no evidence presented that those who returned gunfire directed their weapons in any direction other than at the defendant and his companions.

cluded that the victims were shot by those firing back at the defendant and his companions.[10] The defendant's request to charge did not include a requested charge on the issue and elements of causation with respect to either manslaughter count and the defendant failed to take exception to the trial court's instructions as given. In fact, the defendant affirmatively expressed his satisfaction with every aspect of the jury instructions.[11]

Without deciding whether the conduct of the defendant at trial constituted a waiver of his right to chal-

---

[10] The challenged portion of the trial court's jury instructions is as follows: "The third and final element of the crime charged here is that the defendant—the defendant's conduct must have caused the death of another person. This means that the defendant's conduct was the proximate cause of the [victim's] death. An act or failure to act is the proximate cause of death when it substantially and materially contributes in a natural and continuous sequence, unbroken by an efficient intervening cause to the resulting death. It occurred, and the predominating cause, the substantial factor, from which the death follows as a natural, direct and immediate consequence. It is necessary—it is not necessary, the particular kind of harm that result from the defendant's act be intended by him. Where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible. . . ."

The trial court then immediately limited the application of the proximate cause concept in the present case with the following instruction: "Beginning with count three, you must find beyond a reasonable doubt that the defendant caused the death of the deceased, Sean Clemmons. Before you may do so, you must find beyond a reasonable doubt that the shot which killed Sean Clemmons was fired by Gregg Booker or one of the men whom he allegedly aided or abetted. If you harbor a reasonable doubt as to whether the shot which killed Sean Clemmons was fired by others, not necessarily allied with the defendant, then you must find him not guilty of paragraph three. The same is true with regard to paragraph four [relating to Everne Johnson]."

[11] Immediately prior to the trial court's administration of the jury instructions to the jury, the following discussion took place:

"Mr. Bernardi [The Prosecutor]: All right. Now, before we bring out the jury, we should say something with regard to the instructions.

"The Court: All right.

"Mr. Bernardi: The state—I think requests to instruct have been filed by both the state and defense, and reviewed by Your Honor, myself, and

lenge the court's instructions, as the state suggests, we conclude that this claim fails under the well established principles for review of unpreserved claims as set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Because the defendant failed to request an instruction on this issue or to take exception to the court's instruction as given, he can prevail on his unpreserved constitutionally based claims only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.

A claim that the court's jury instructions improperly enlarged the scope of the offense charged implicates the criminal defendant's sixth amendment rights, under the federal constitution, to be sufficiently informed of the nature of the charges against him.[12] *State* v. *Ruscoe,* 212 Conn. 223, 253, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). "In reviewing a constitutionally based chal-

counsel for the defendant, and as they—as they've been filed by both the state and the defense, the state and the defense have no difficulty with the charge that Your Honor is going to give at this point.

"The Court: All right. Mr. Imhoff?

"Mr. Imhoff [Defense Counsel]: I concur in that Your Honor.

"The Court: All right. Okay. Bring in the jury."

Immediately after the trial court gave the jurors their instructions and dismissed them for deliberations, the following discussion occurred:

"The Court: Is there any comment on the charge or—

"Mr. Bernardi: I don't have any comment.

"Mr. Imhoff: No, Your Honor."

[12] The defendant did not present an independent state constitutional claim, and, therefore, we need not consider this claim on state constitutional grounds.

lenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. . . . The charge is not to be judged in artificial isolation from the overall charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Falcon*, 26 Conn. App. 259, 269, 600 A.2d 1364 (1991).

Viewing the instructions as a whole in this case, the defendant's claim must fail because he cannot satisfy *Golding's* third prong. Although the trial court's initial discussion of proximate cause may have been overly broad as applied to this particular case, the trial court immediately proceeded to limit the proximate cause concept by further instructing the jury. Specifically, the trial court expressly stated to the jury that they must find that either the defendant or one of his companions fired the bullets that killed the victims in order to enter guilty verdicts on the manslaughter counts, and that if they harbored a reasonable doubt as to whether the fatal shots were fired by others not necessarily with the defendant, then they must find the defendant not guilty of both manslaughter counts.

"The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions. *State* v. *Ortiz*, 217 Conn. 648, 669, 588 A.2d 127 (1991)." *State* v. *Parris*, 219 Conn. 283, 294, 592 A.2d 943 (1991). Reading the instructions as a whole, as we must, the defendant cannot establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial. His claim, therefore, must fail.

The judgment is affirmed.

In this opinion the other judges concurred.