# STATE OF CONNECTICUT *v.* GAYLORD SALTERS
## (AC 22101)

Dranginis, Flynn and West, Js.

Argued February 11—officially released July 15, 2003

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Gaylord Salters, appeals from the judgment of conviction, rendered after a jury trial, of one count of assault of an employee of the department of correction in violation of General Statutes (Rev. to 1993) § 53a-167c, as amended by Public Acts 1993, No. 93-246, § 1, and Public Acts 1994, No. 94-62.[1] On appeal, the defendant claims that the trial court improperly (1) instructed the jury in a manner that violated his constitutional right to present a defense of self-defense and (2) admitted into evidence portions of the rules of conduct of the John R. Manson Youth Institution. We affirm the judgment of the trial court.

---

[1] The defendant was charged with two counts of assault of an employee of the department of correction in violation of § 53a-167c. The difference in the two counts was the identity of the victim. In count one, the victim was correction officer Patrick Marangone, while in count two, the victim was correction officer Patrick Sampson. The defendant was convicted of a violation of § 53a-167c only in count one for assaulting Marangone.

The jury reasonably could have found the following facts. On November 24, 1994, the defendant and Charles Fraizer were cellmates at the John R. Manson Youth Institution in Cheshire. After the inmates finished their lunch, Patrick Sampson, a correction officer, ordered the inmates back to their cells. Fraizer delayed in his return to his cell, and Sampson decided to issue him an informal disposition as punishment. Sampson ordered Fraizer out of his cell so he could receive the written notice of the report. Fraizer took the report, formed it into a ball and threw the report at Sampson. Fraizer then swung at Sampson with his fist. A fight ensued between Sampson and Fraizer during which they both fell to the floor.

Patrick Marangone, another correction officer, attempted to move Fraizer off of Sampson. The defendant, who had left his cell during the altercation, kicked Marangone in the head. Marangone fell to the floor and the defendant proceeded to kick him repeatedly in the head, back and legs. Other correction officers arrived and restrained Fraizer and the defendant. Sampson and Marangone were taken for medical treatment of their injuries sustained during the fight.

The defendant offered other countervailing evidence, claiming that he had acted in self-defense, and he posits a different factual scenario in support of his claim. The defendant testified that he left his cell to pull Fraizer away from Sampson and that he did not notice Marangone until Marangone punched him in the chin without provocation. The defendant claimed that Marangone kept coming toward him in an aggressive manner and that he did not have anywhere to run. The defendant stated that he fought with Marangone to defend himself.

The court instructed the jury on the elements of self-defense pursuant to General Statutes § 53a-19.[2] Our

---

[2] General Statutes § 53a-19 (a) provides, in relevant part, that "a person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use

Supreme Court released its opinion in *State* v. *Davis*, 261 Conn. 553, 804 A.2d 781 (2002), on August 27, 2002. In *Davis*, the court held that "when a defendant has been charged only with violations of § 53a-167c or [General Statutes] § 53a-167a, he is not entitled to an instruction on self-defense." *State* v. *Davis*, supra, 573. This opinion was issued after the defendant filed his appellate brief, but before the state filed its appellate brief. We, therefore, ordered the parties to file simultaneous supplemental briefs addressing the effect, if any, of *Davis* on the issues presently before us on appeal.

I

The defendant's first claim is that the court improperly instructed the jury in violation of his constitutional right to present a defense of self-defense. We do not agree.

The defendant conceded in his brief that this issue was not properly preserved at trial, and, therefore asks this court to review his claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. Because the record is adequate for review and the fundamental right to present a defense, including proper jury instructions on the elements of the defense, is of constitutional magnitude, we will

of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose . . . ."

review the claim. See *State* v. *Montanez*, 71 Conn. App. 246, 252, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002).

We next set out certain standards applicable to our review. "[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 252–53; see *State* v. *Davis*, supra, 261 Conn. 564. In construing statutes, our review is plenary. See *State* v. *O'Neil*, 65 Conn. App. 145, 159, 782 A.2d 209 (2001), aff'd, 262 Conn. 295, 811 A.2d 1288 (2003).

We must determine whether *State* v. *Davis*, supra, 261 Conn. 553, controls the resolution of the defendant's claim of improper jury instructions. If *Davis* is found to be applicable here, then the defendant would not have been entitled to a self-defense instruction, and, therefore, there would be no impropriety in the giving of a favorable charge to him to which he was not entitled. On the other hand, if *Davis* is not applicable to the facts of this case, then we must address the defendant's claim. We conclude that *Davis* is applicable and defeats the defendant's first claim.

Our Supreme Court stated that "when a defendant has been charged only with violations of § 53a-167c or § 53a-167a, he is not entitled to an instruction on self-defense." *State* v. *Davis*, supra, 261 Conn. 573. The proper defense in cases in which the defendant claims that an officer used unreasonable and unnecessary physical force is that the officer was not acting in the performance of his duty. Id., 574. The rationale behind

our Supreme Court's determination in *Davis* was based on the requirement that the state must prove beyond a reasonable doubt that the officer was acting in the performance of his duties as an element of § 53a-167c[3] and the fact that excessive or unreasonable physical force by the officer would place his actions outside the performance of his duties. Id., 573–74. The defendant would be entitled to an acquittal if the state failed to prove that the use of force was within the performance of the officer's duties. The defendant did not interpose the *Davis* defense that the correction officer was not acting in the performance of his duties.

The defendant, however, argues that the holding in *Davis* is limited to situations where a defendant is charged with a violation of § 53a-167a or § 53a-167c by means of using physical force to interfere with or to assault a peace officer while effectuating an arrest. The defendant contends that our Supreme Court's decision in *Davis* was fact bound and based solely on the fact that the peace officers were attempting to arrest the defendant in that case and the existence of General Statutes § 53a-23, which prohibits the use of physical force to resist an arrest by a peace officer.[4] According to the defendant, the factual distinctions between *Davis* and the present case are that here neither Sampson nor Marangone was a peace officer,[5] neither Sampson nor

---

[3] General Statutes (Rev. to 1993) § 53a-167c, as amended by Public Acts 1993, No. 93-246, § 1, and Public Acts 1994, No. 94-62, provides in relevant part: "A person is guilty of assault of . . . [an] employee of the department of correction . . . when, with intent to prevent a reasonably identifiable . . . employee of the department of correction . . . from performing his duty, and while such . . . employee . . . is acting in the performance of his duties, (1) he causes physical injury to such . . . employee . . . ."

[4] General Statutes § 53a-23 provides: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer, whether such arrest is legal or illegal."

[5] General Statutes (Rev. to 1993) § 53a-3 (9), as amended by Public Acts, Spec. Sess., May 25, 1994, No. 94-1, § 98, defines "peace officer" as "a member of the division of state police within the department of public safety or an organized local police department, a chief inspector or inspector in the

Marangone was attempting to arrest either Fraizer or the defendant,[6] and § 53a-23 was not applicable because of the fact that neither Sampson nor Marangone was a peace officer attempting to effectuate an arrest. We have carefully analyzed the *Davis* case and conclude that its holding cannot be so limited.

Our Supreme Court expressly stated that "a defendant charged with violating § 53a-167a (a) or § 53a-167c (a) is not entitled to a self-defense instruction." *State v. Davis*, supra, 261 Conn. 571. Because § 53a-167a (a) refers explicitly to both peace officers and firefighters and § 53a-167c (a) refers to several classifications of professions in addition to peace officers and firefight-

division of criminal justice, a sheriff, deputy sheriff or special deputy sheriff, a conservation officer or special conservation officer, as defined in section 26-5, a constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, 29-18a or 29-19, an adult probation officer, appointed under section 54-104, an official of the department of correction authorized by the commissioner of correction to make arrests in a correctional institution or facility, any investigator in the investigations unit of the workers' compensation commission or any special agent of the federal government authorized to enforce the provisions of Title 21 of the United States Code."

The only definition Sampson and Marangone possibly fit into is "an official of the department of correction authorized by the commissioner of correction to make arrests in a correctional institution or facility . . . ." Although both Sampson and Marangone were employed as correction officers, there is no evidence in the record that the commissioner of correction authorized either of them to make arrests inside a correctional institution or facility. Furthermore, there exists a distinction between a peace officer and a correction officer as seen by the fact that General Statutes § 53a-167c (a) separately lists peace officer and employee of the department of correction.

[6] The facts reveal that Sampson was attempting only to issue an informal disposition to Fraizer, which did not involve the correction officer's taking custody of an inmate to charge him with a violation of a crime as set forth in the general statutes, but rather resulted in the taking away of certain privileges of an inmate for violating the rules of the correctional institution. In addition, the code of penal discipline in effect at the John R. Manson Youth Institution in 1994 drew a distinction between a violation of the Connecticut Penal Code and a violation of the rules of the institution as seen by the mandate that the state police become involved in investigating any serious criminal offenses.

8

ers, we conclude that *Davis'* broad language cannot be limited to its facts.[7] If we were to agree with the defendant that *Davis* is limited to situations where a defendant uses physical force to resist an arrest by a peace officer due to the existence of § 53a-23, we would have to ignore the indisputable fact that neither firefighters nor the numerous professions defined in § 53a-167c (a) have the power to make an arrest. Our Supreme Court's decision plainly encompassed all statutory classifications of professions when it stated that a defendant is not entitled to a self-defense instruction when charged with violating § 53a-167a or § 53a-167c. Because correction officers are included in the classifications of people who are potential victims in § 53a-167c, the defendant was not entitled to a self-defense instruction.

The prohibition in § 53a-23 on the use of physical force to resist a legal or illegal arrest has no statutory counterpart affecting correction officers in the performance of their duties. There is, however, a statute that expressly allows a correction officer to use reasonable physical force to maintain order and discipline in a correctional institution. General Statutes § 53a-18 (2) provides that "[a]n authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is reasonable and authorized by the rules and regulations of the Department of Correction." A correction officer, therefore, is statutorily authorized to use reasonable physical force in the performance of his duties. Clearly, if the defendant claimed that the force used was excessive or unnecessary, the proper defense in this case would have been that Marangone's use of physical force on the defendant was not in the performance of his duties.

[7] Included in General Statutes § 53a-167c (a) are peace officers, firefighters, employees of emergency medical services organizations, emergency room physicians or nurses, employees of the department of correction, employees of the board of parole and probation officers.

The defendant claims on appeal that the court instructed the jury on self-defense improperly. First, the defendant argues that the court issued an improper instruction when it charged the jury that in determining whether the defendant's use of force against Marangone was in self-defense, it might consider the fact that the attack happened in a correctional institution and that it might consider the evidence of some of the rules of that institution. Second, the defendant argues that the instructions concerning § 53a-18 (2) were improper because they could mislead the jury to conclude that the defendant could never use physical force to defend himself when a correction officer used physical force to maintain order and discipline, and, also that the defendant must be the initial aggressor. The defendant, however, was not entitled to a self-defense instruction. See *State* v. *Davis*, supra, 261 Conn. 571. The proper defense, as stated previously, was that Marangone was not acting within the performance of his duties when he used physical force on the defendant.

The court correctly instructed the jury on the elements of § 53a-167c, including that the state must prove beyond a reasonable doubt that Marangone was acting within the performance of his duties when the defendant used physical force on him. The court further instructed the jury that a correction officer is permitted to use reasonable physical force in the performance of his duties to maintain order and discipline in a correctional institution pursuant to § 53a-18 (2). Because the court properly instructed the jury on the elements of § 53a-167c and because the defendant was not entitled to the self-defense instruction that he received, we conclude that the effect of the jury instructions was not harmful to him. The charge was presented to the jury in such a way that no injustice was done to the defendant. Furthermore, we conclude that the jury was not misled.

## II

The defendant's second claim is that the court abused its discretion in admitting into evidence the rules of conduct of the John R. Manson Youth Institution.[8] Specifically, the defendant argues that the rule that an inmate cannot have physical contact with a correction officer precluded his defense of self-defense.

The following additional facts are necessary for the resolution of the defendant's claim. On direct examination by the state, Captain Luis Irizarry of the department of correction was asked, "Now, can you tell the jury, please, when, back in 1994 now I am talking about, when an inmate enters the facility, Manson Youth, what is the nature of the indoctrination that they are given?" The defendant objected to that question on the ground of relevance. An offer of proof was made by the state outside the presence of the jury. The court ruled that it would "permit inquiry through [Irizarry], assuming he is qualified about the rules pertaining to the use of force, because I think that goes to the reasonable use of force and whether the officers are within the scope of their duties. And I think the law does dovetail into the institutions as far as that is concerned. But the pending question is about a broad question about indoctrination of inmates. I don't know what that means or

---

[8] The state claims that review of the defendant's claim is procedurally barred. First, the state argues that the defendant waived any claim because he cross-examined Captain Luis Irizarry of the department of correction concerning the contested evidence and admitted into evidence portions of the inmate handbook that discussed the evidence. Second, the state argues that the defendant induced the error by offering into evidence portions of the inmate handbook. Third, the state asserts that because the defendant's position concerning the evidence at trial is contrary to his position on appeal, the evidentiary claim is unpreserved. Finally, due to these procedural defects, the state contends that the defendant failed to ask for *Golding* or plain error review. We conclude, however, that this claim was preserved by the exception given to the defendant by the court in its ruling that Irizarry could testify about the rule against physical contact with the correction officers and the defendant's knowledge of these rules.

where that is going, but the breadth of the question would seem to cover many, many areas that are irrelevant here. This is a discrete incident we have talked about and the officers have described what happened, so in terms of the use of force, for example, this absolute prohibition to touch a correction officer, I think that is a fair question you can ask, but other than the use of force on either side, I will not permit further questions. The defense and the state can have exceptions to my ruling because it limits what both sides can ask in that regard."

Irizarry then testified that each inmate receives an inmate handbook and attends an orientation session when he arrives at the institution. Both the handbook and the orientation, he stated, informed the inmates, including the defendant, that physical contact with a correction officer was prohibited.[9] On cross-examination, the defendant attempted to introduce the entire inmate handbook into evidence. The court, however, limited the portions of the handbook that would be admitted.

The defendant argues on appeal that the evidence of the rules of the prison was irrelevant on the issue of whether the defendant's actions were justified and that the introduction of the rules effectively prohibited his claim of self-defense. At trial, however, the defendant argued to the court that the rules of the institution were irrelevant to the issues presented in a criminal assault prosecution, stating that "[t]his is not a disciplinary hearing within an institution, so whether the conduct

---

[9] Rule 9.5, paragraph 10 (D), of the inmate handbook, which was introduced into evidence, designated assault on a department of correction employee as a punishable offense. Specifically, this rule prohibited "[i]ntentionally striking or attacking a Department of Correction Employee with or without the use of an object or substance or behaving in such a reckless manner that one's actions causes a strike of a Department of Correction Employee."

of an inmate or an officer did or didn't comply with the rules of the institution is irrelevant." Our review is limited to the objection and argument made at trial. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. . . . In other words, [o]nce an objection has been made and the grounds stated, a party is normally limited on appeal to raising the same objection on the same basis as stated at trial." (Internal quotation marks omitted.) *State* v. *McHolland*, 71 Conn. App. 99, 109, 800 A.2d 667 (2002). We therefore review the defendant's claim on the basis of the relevance of the evidence to the issues presented at trial.

We begin by setting forth our standard of review. "[O]ur standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . It is a fundamental rule of appellate review of evidentiary rulings that if error is not of constitutional dimensions, an appellant has the burden of establishing that there has been an erroneous ruling which was probably harmful to him." (Internal quotation marks omitted.) *State* v. *Henry*, 72 Conn. App. 640, 662, 805 A.2d 823, cert. denied, 262 Conn. 917, 811 A.2d 1293 (2002).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . It is not logical relevance alone, however, that secures the admission of evidence. Logically relevant evidence must also be legally relevant . . . that

is, not subject to exclusion for any one of the following prejudicial effects: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citations omitted; internal quotation marks omitted.) *State v. Rogelstad*, 73 Conn. App. 17, 22–23, 806 A.2d 1089 (2002).

Here, the court overruled the defendant's objection concluding that the rules of the prison were relevant to the issues of the reasonable use of force by the defendant in the prison and whether the correction officers were acting within the scope of their duties when they used force against the defendant. We agree with the court that this evidence was relevant. Section 53a-167c requires that a correction officer act within the performance of his duties, and, therefore, the rules of the institution are relevant to establishing this element. "The phrase in the performance of his official duties means that the [correction] officer is simply acting within the scope of what [he] is employed to do." (Internal quotation marks omitted.) *State v. Torwich*, 38 Conn. App. 306, 316, 661 A.2d 113, cert. denied, 235 Conn. 905, 665 A.2d 906 (1995). Section 53a-18 (2) provides that a correction officer may use reasonable physical force to maintain order and discipline in a correctional institution. Therefore, evidence of the rules of the institution, which Marangone was to enforce through the use of reasonable physical force if necessary, was relevant to the issue of whether he was acting in the performance of his duties when he became involved in the altercation between Sampson, Fraizer

and the defendant and whether the use of physical force by Marangone on the defendant was within the performance of his duties.

The challenged evidence is also legally relevant. There is no indication that the evidence aroused the emotions of the jury, created an issue collateral to the crimes charged that would distract the jury, required a large amount of time to establish, or unfairly surprised the defendant. Accordingly, we conclude that the court did not abuse its discretion in admitting the evidence pertaining to the rules of the institution.

The judgment is affirmed.

In this opinion the other judges concurred.