## STATE OF CONNECTICUT *v.* DONNA DUNSTAN
## (AC 33789)

Gruendel, Alvord and Foti, Js.

---

Argued May 30—officially released September 3, 2013

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Emily Graner Sexton*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Cathryn J. Krinitsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant appeals from the judgment of conviction, rendered following a jury trial, of two counts of assault of a public safety officer in violation of General Statutes § 53a-167c (a) (1), two counts of interfering with an officer in violation of General Statutes § 53a-167a, and one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that the court (1) improperly rejected her request to charge the jury regarding her right to protect herself against an officer's unlawful use of force, (2) improperly declined to instruct the jury on the charge of interfering with a police officer as a lesser included offense, (3) unconstitutionally enlarged the offenses of assault of a public safety officer through its supplemental charge on causation, (4) improperly merged the conviction on count four, with count two, as a lesser included offense, and (5) abused its discretion by denying her application for accelerated rehabilitation. We affirm in part and reverse in part the judgment of the trial court.

Shawn Ware, a Hartford police officer, was assigned to direct traffic for construction workers at a site in Hartford on June 22, 2010. While directing traffic, Ware paused to provide directions to a driver. During this

time, the defendant, a passenger in the car immediately behind the vehicle receiving directions, continually sounded her car's horn and loudly yelled obscenities from the passenger window. After the first car drove away, Ware directed the driver of the second car to pull over and approached the passenger side of the vehicle in order to arrest the defendant.

Ware asked the defendant her name[1] and directed her to exit the vehicle. The defendant refused to comply and locked the passenger door. When the driver unlocked the car doors, Ware opened the passenger door and placed himself between the open door and the defendant. The defendant attempted to pull the door closed, hitting Ware in the process. Ware then sprayed one burst of oleoresin capsicum (pepper spray) toward the defendant's face. When Ware began to remove the defendant from the vehicle, she started swinging at Ware and punching his upper body. Once outside of the vehicle, the defendant continued swinging and kicking at Ware, punching his upper body and kicking his legs. During the altercation, Ware sprayed the defendant with pepper spray a second time and called for assistance.

Sergeant Edward Yergeau was the first officer to respond to the scene. Yergeau observed Ware defending himself against a woman who was striking him in the upper torso while loudly screaming expletives. After the defendant refused to comply with Yergeau's verbal commands to lie on the ground, he struck the defendant several times on her back with his baton. When the defendant continued struggling with the officers, Yergeau grabbed her arm and eventually kicked her legs out from under her, forcing the defendant to the ground. In the process, the defendant twisted her body and

---

[1] The defendant stated that her name was "Candace Matthews"; Ware subsequently learned that this was a false name.

slammed into Yergeau while trying to escape from his grasp. A third police officer, Brian Bishop, arrived on the scene shortly thereafter and helped the other two officers gain control of the defendant and place her under arrest. Ware and Yergeau were injured during the altercation with the defendant. Ware suffered bruising on his arms and chest while Yergeau suffered a torn rotator cuff.

The jury found the defendant guilty on all counts. The trial court merged the conviction on the fourth count of interfering with an officer with the second count of assault of a public safety officer and sentenced the defendant to a five year term of imprisonment, execution suspended after one year, and four years of probation.[2] This appeal followed. Additional facts are set forth as necessary.

I

The defendant first claims that the court improperly rejected her request to charge the jury regarding her right to protect herself against the unlawful use of physical force, thereby violating her right to due process. According to the defendant, the court's failure to fully instruct on General Statutes § 53a-22 improperly relieved the state of its burden to prove all elements of the crimes of assault of a public safety officer and interfering with an officer.[3] We are not persuaded. The

[2] We note that the third count of interfering with an officer was not merged with the first count of assault of a public safety officer. The defendant's conduct in supplying Ware with a false name provided an independent factual basis to support the interfering charge distinct from the defendant's physical resistance toward Ware.

[3] General Statutes § 53a-22 provides in relevant part: "(a) For purposes of this section, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not in law constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of physical force to make an arrest . . . .

"(b) Except as provided in subsection (a) of this section, a peace officer . . . is justified in using physical force upon another person when and to

following facts are necessary to our resolution of this issue.

The defendant submitted proposed jury instructions pertaining to the assault charge that, in part, instructed the jury that the state must prove beyond a reasonable doubt that the officer actually believed that she committed an offense and the degree of force used was necessary, and that these beliefs were reasonable. The proposed instructions also provided that "[t]he evidence in this case raises the defense that the [officers] were not justified in the degree of physical force used in making an arrest. . . . [I]f you find that the state has proved each element of [a]ssault on a [p]eace [o]fficer . . . you must go on to consider whether or not the [officers] were justified in their use of force. . . . [T]he state must not only prove beyond a reasonable doubt all the elements of the crime charged to obtain a conviction, but must also disprove beyond a reasonable doubt that the defendant was justified in her use of force."

The court declined to give the requested charge and included the standard instructions, which require the jury to find that the force used by the police was reasonably necessary under the circumstances. The court concluded that the standard instruction would be sufficient and fair to the defendant, noting that the defendant's proposed instruction would be more appropriate in a case in which affirmative evidence or witness testimony was presented regarding claims of police assault or excessive use of force.

As a preliminary matter, we set forth the standard of review and legal principles that will guide our analysis. "Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine

the extent that he or she reasonably believes such to be necessary to . . . [e]ffect an arrest . . . of a person whom he or she reasonably believes to have committed an offense . . . ."

whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Stovall*, 142 Conn. App. 562, 577, 64 A.3d 819, cert. granted on other grounds, 309 Conn. 917, 70 A.3d 40 (2013). "An error in instructions in a criminal case is reversible error when it is shown that it is reasonably possible for errors of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Kurrus*, 137 Conn. App. 604, 609, 49 A.3d 260, cert. denied, 307 Conn. 923, 55 A.3d 566 (2012).

Our Supreme Court has determined that in a case in which a defendant is charged with assault of a peace officer or interfering with an officer, in lieu of a self-defense instruction, the court must provide "a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest . . . ." *State* v. *Davis*, 261 Conn. 553, 571, 804 A.2d 781 (2002). This court has further concluded that an officer's exercise of reasonable force is inherent in the performance of duties, and therefore unreasonable and unnecessary force by a police officer would place the actions outside the performance of that officer's duties.

*State* v. *Baptiste,* 133 Conn. App. 614, 627, 36 A.3d 697, cert. granted on other grounds, 304 Conn. 921, 41 A.3d 661 (2012);[4] *State* v. *Salters,* 78 Conn. App. 1, 5–6, 826 A.2d 202, cert. denied, 265 Conn. 912, 831 A.2d 253 (2003). Whether an officer is acting in the performance of his duties "is ultimately a factual question to be determined by the jury, taking into account all of the circumstances of the case . . . ." *State* v. *Davis,* supra, 572.

The defendant cannot prevail on her claim of instructional error. In the present case, the court instructed on more than one occasion that the state bears the burden of proof to establish each element of assault and interference beyond a reasonable doubt, including the element of "in the performance of his duties . . . ." When charging the jury on the element of "in the performance of his duties," the court instructed the jury that it must necessarily consider the law that justifies an officer's use of physical force in effectuating an arrest.[5] In fact, the court specifically instructed: "If you find that . . . the force used by the officer was not reasonable, *you will find* that the officer was not acting within the performance of his official duties . . . ." (Emphasis

---

[4] We note that our Supreme Court granted certification to appeal in *State* v. *Baptiste,* 304 Conn. 921, 41 A.3d 661 (2012), limited to the following issue: "Did the Appellate Court properly determine that the trial court's instructions to the jury regarding the charge of assault of a peace officer were inadequate?"

[5] The court charged the jury with the following instruction regarding the interrelation between the use of force and the element, "in the performance of his duties": "In determining whether the officer was acting in the performance of his duties, *you must consider another . . . law that justifies the use of physical force by officers in making an arrest.* . . . [A]n officer is justified in using physical force upon another person when and to the extent he reasonably believes such to be necessary to effect an arrest of a person whom he reasonably believes to have committed an offense, unless he knows that the arrest or custody is unauthorized. An officer's use of force to effect an arrest is justified only so far as he reasonably believes that a person has committed an offense." (Emphasis added.)

added.) See *State* v. *Baptiste*, supra, 133 Conn. App. 627; *State* v. *Salters*, supra, 78 Conn. App. 5–6. The court's instructions drew the jury's attention to the fact that it must determine, as a matter of fact, whether the officer's use of force was reasonable as part and parcel of its determination of whether the officer was acting in the performance of his duties. Moreover, in finding that the officer's use of force was reasonable, and therefore, that he was acting in the performance of his duties, the jury would necessarily have considered whether resistance by the defendant was justified. *State* v. *Davis*, supra, 261 Conn. 571 (person not required to submit to *unlawful use of physical force*). Accordingly, we conclude that the jury instructions properly framed the issues and that it was not reasonably possible that the jury was misled.[6]

II

The defendant's second claim is that the court improperly declined to instruct the jury on the charges of interfering with a police officer as a lesser included offense of the charges of assault of a public safety officer. We are not persuaded.

In count two of the amended information, the state alleged that the defendant assaulted Yergeau, causing physical injury to him by acts including, but not limited to, physically striking him. In count four of the amended information, the state alleged that the defendant interfered with the performance of Yergeau's duties by engaging in acts of physical resistance toward him. The defendant requested that the jury be instructed that interfering constituted a lesser included offense of the

[6] The defendant also asserts that the instruction relieved the state of its burden to prove her intent in using force against the officers and failed to properly outline the test to be applied in ascertaining the reasonableness of the officers' beliefs. Because our conclusion that the court's instructions properly framed the issues pertaining to §§ 53a-167c and 53a-22 is dispositive, we need not address these arguments.

charge of assault, as it pertained to Yergeau. The court denied the defendant's request, concluding that there was enough information to allow the jury to distinguish between the claims made by the state relating to the interfering and assault charges, respectively. In so concluding, the court observed that instructing the jury that the interfering charge constituted a lesser included offense as to Yergeau, but not as to Ware, could result in jury confusion. The court further noted that should the jury find the defendant guilty of both charges, the more appropriate course of action would be to merge the conviction of these offenses.

We disagree with the defendant that the court's instructions were improper and conclude that her reliance on *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), as dispositive of this claim is misplaced.[7] The cases relied upon by the defendant apply the *Whistnant* factors to *uncharged* lesser included offenses. See, e.g., *State* v. *Smith*, 262 Conn. 453, 455, 815 A.2d 1216 (2003); *State* v. *Vass*, 191 Conn. 604, 616, 469 A.2d 767 (1983); *State* v. *Jefferson*, 114 Conn. App. 566, 571–72, 970 A.2d 797, cert. denied, 292 Conn. 921, 974 A.2d 722 (2009). In the present case, however, the defendant was charged in the information with two counts of assault and two charges of interfering. Furthermore, the defendant has not provided this court with any authority to support her argument that *Whistnant* is dispositive

---

[7] *Whistnant* sets forth a four-pronged test, which entitles a defendant to an instruction on a lesser offense if: "(1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Internal quotation marks omitted.) *State* v. *Smith*, 262 Conn. 453, 458, 815 A.2d 1216 (2003).

under circumstances in which the lesser included offenses have been independently charged in the information. It is well established that "[a]s long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Vilchel*, 112 Conn. App. 411, 417, 963 A.2d 658, cert. denied, 291 Conn. 907, 969 A.2d 173 (2009). On the basis of our review of the entire charge, we cannot conclude that the court erred by declining to give the requested instruction in order to avoid potential jury confusion.

## III

The defendant's third claim of error is that the trial court's supplemental charge on causation unconstitutionally enlarged the offenses of assault of a public safety officer as charged in the information. According to the defendant, the court improperly permitted the jury to find that she had caused injury to the officers in a manner that was not charged in the information. We disagree.

The state charged, in counts one and two of its information, that the defendant assaulted Ware and Yergeau, respectively, by acts "including but not limited to evidence that the defendant physically struck" the officers. In the state's response to the defendant's request for a bill of particulars and essential facts, the state specified that the defendant assaulted the officers by physically striking them and by physical actions including, but not limited to, "hitting, punching, striking, pushing, kicking and/or flailing."

During deliberations, the jury submitted a question to the court, asking, "what is the definition of the word caused? Is there a difference such as direct or indirect." The court provided an additional instruction on causation, stating, in part: "Cause does not necessarily mean

the last act or cause, or the act in point of time nearest to the injuries. . . . An act is a cause of the injuries when it substantially and materially contributes, in the natural and continuous sequence, unbroken by an efficient, intervening cause, to the injuries." The court then charged the jury regarding cause in fact and proximate cause. The court concluded the charge by directing the jury to consider the defendant's behavior, instructing that "the cause here is related to the conduct that the defendant is alleged to have engaged in. In the information, the state alleged, in both counts one and two . . . [that the defendant] caused physical injury to such peace officer . . . by conduct including but not limited to evidence that the defendant physically struck Officer Shawn Ware. . . . Struck can mean hit, punch, kicked, pushed, some sort of force . . . . So, again, in considering cause, the reference to causation is whether the conduct . . . having been done by the defendant, which is some sort of striking, was a cause of the injuries."

We first set forth our standard of review. "A claim that the court's jury instructions improperly enlarged the scope of the offense charged implicates the criminal defendant's sixth amendment rights, under the federal constitution, to be sufficiently informed of the nature of the charges against him."[8] *State* v. *Booker*, 28 Conn. App. 34, 46, 611 A.2d 878, cert. denied, 223 Conn. 919, 614 A.2d 829 (1992), cert. denied, 507 U.S. 916, 113 S. Ct. 1271, 122 L. Ed. 2d 666 (1993). "The function of an accusatory pleading such as an information is to inform a defendant of the nature and cause of the accusation as required by our federal and state constitutions. . . . [That] the offense should be described with sufficient definiteness and particularity as to apprise the accused of the nature of the charge so he can prepare to meet

[8] A similar right is set forth in article first, § 8, of the Connecticut constitution. See *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011).

it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct. . . .

"[E]nlargement cases involve claims that the trial court expanded the state's information by instructing the jury on statutory or factual alternatives not charged in the information. . . . It is incumbent upon the defendant in an enlargement case to demonstrate that the trial court's charge caused him unfair surprise or prejudiced him in the preparation of his defense. . . . In other words, the defendant must show that: (1) the challenged jury instructions improperly enlarged the charges brought against him; and (2) such enlargement was prejudicially harmful. The defendant's enlargement claims, like other claims that jury instructions violated a constitutional right, require us to exercise plenary review as we examine the charge as a whole to determine whether it misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *David N.J.*, 301 Conn. 122, 158, 19 A.3d 646 (2011).

The defendant's argument that the court's instruction allowed the jury to find the defendant guilty if it found that her conduct set off a chain of events that led to the officers' injuries is unpersuasive. The information alleged that the defendant caused injury to the officers by acts, including but not limited to, physically striking them. Although the court instructed the jury on indirect and proximate cause, it limited these broader instructions by explicitly directing the jury to consider the defendant's conduct, as specifically alleged in the information and the bill of particulars, when considering causation. In fact, the trial court expressly stated to the jury that "the reference to causation is whether the conduct . . . having been done by the defendant, which is some sort of striking, was a cause of the injuries." "The jury is presumed, in the absence of a fair indication to the contrary, to have followed the court's instructions." (Internal quotation marks omitted.) *State*

v. *Booker*, supra, 28 Conn. App. 47. Accordingly, we conclude that the court's supplemental jury instruction did not improperly expand the charges with which the defendant was charged.

IV

The defendant further claims that the court improperly merged the conviction of interfering with an officer and assault of a public safety officer as they pertained to her conduct toward Yergeau. We agree.

Following the jury's verdict, the court merged the interfering charge set forth in count four, with the greater offense, the assault charge set forth in count two. During the defendant's sentencing hearing, the court, *Newson, J.*, noted that the conviction of the two charges had been merged because the crime of interfering constituted a lesser included offense of the crime of assault. Accordingly, the court sentenced the defendant on a single count of interfering with an officer.[9]

Recently, our Supreme Court has concluded that "the vacatur approach shall replace the use of the merger of convictions approach when a defendant is convicted of greater and lesser included offenses." *State* v. *Polanco*, 308 Conn. 242, 248, 61 A.3d 1084 (2013). Accordingly, "when a defendant is convicted of greater and lesser included offenses, the trial court shall vacate the conviction for the lesser offense rather than merging it with the conviction for the greater offense." Id., 260.

---

[9] The defendant sought review of this claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), however, our Supreme Court stated that "[t]o the extent that . . . defendants seek to have the rule enunciated in this opinion apply to their merged convictions, they may do so simply by requesting the administrative relief ordered in the present case. In the event of such a request, the responsible official for the judicial district involved will comply with the request and modify the subject record accordingly." Id., 260 n.10. For this reason, we need not conduct an analysis pursuant to *Golding*, and instead direct the trial court to provide the relief set forth in *Polanco*.

We agree with the parties that *Polanco* is controlling in the present case and, therefore, conclude that the lesser included offense must be vacated, rather than merged.[10]

## V

The defendant finally claims that the court abused its discretion by denying her request for accelerated rehabilitation pursuant to General Statutes § 54-56e.[11] We disagree.

The record reveals the following relevant facts. On October 25, 2010, the court, *Carbonneau, J.,* held a hearing to determine the defendant's eligibility for accelerated rehabilitation. During that hearing, the court reviewed a letter submitted by the alternative incarceration center noting that the defendant had missed at least one appointment. Yergeau testified in opposition to the defendant's application for accelerated rehabilitation. The court noted that the defendant's alleged noncompliance with the center "speaks of, if not an inability, an unwillingness to fully cooperate," but continued the matter to allow the defendant more time to comply with the program's requirements.

The court held a second hearing to determine the defendant's eligibility for accelerated rehabilitation on December 3, 2010. The prosecutor objected on the basis of the violent nature of the incident and the fact that

---

[10] The parties agreed at oral argument before this court that resentencing upon remand is not necessary in the present case.

[11] General Statutes § 54-56e provides in relevant part: "(a) There shall be a pretrial program for accelerated rehabilitation of persons accused of a crime . . . for which a sentence to a term of imprisonment may be imposed, which crimes or violations are not of a serious nature.

"(b) The court may, in its discretion, invoke such program on motion . . . with respect to a defendant (1) who, the court believes, will probably not offend in the future, (2) who has no previous record of conviction of a crime . . . and (3) who states under oath . . . or . . . under the penalties of perjury, that the defendant has never had such program invoked in the defendant's behalf . . . ."

the defendant again had failed to fully comply with the alternative rehabilitation center program. Defense counsel argued that the defendant's compliance with the program had improved and that she missed only one scheduled meeting due to illness. Yergeau again objected to the defendant's application for accelerated rehabilitation due to the injuries he sustained during his altercation with the defendant. Yergeau testified that he had been unable to return to work since that date, attends physical therapy three times a week, and still has a limited range of motion in his right arm. The defendant then testified that her actions were the result of Ware's improper use of force. The court denied the defendant's motion for accelerated rehabilitation, concluding that this case is "not a factual basis . . . which should . . . be left untested" in light of the defendant's allegations of unlawful force.

"The granting or denial of an application for accelerated rehabilitation implicates the exercise of discretion by the trial court. . . . Our review of the trial court's exercise of its discretion is limited to the questions of whether the court correctly applied the law and whether it could reasonably conclude as it did. . . . It is only where an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . Every reasonable presumption will be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Rios*, 110 Conn. App. 442, 447–48, 954 A.2d 901 (2008).

We disagree with the defendant's assertion that the court failed to consider the proper statutory criteria. Both the prosecutor and Yergeau objected to the defendant's application, and Yergeau alleged that he suffered serious injuries as a result of the altercation. Additionally, the record reveals that the defendant did not fully

comply with court orders. The court had before it evidence that the defendant had not complied with the alternative incarceration center's program in October, noting that the defendant's explanation as to her absences indicated an "inability, if not an unwillingness to fully cooperate." Despite the defendant being given an opportunity to fully comply with the program, the court learned during the December, 2010 hearing that the defendant had again failed to attend a program meeting. Considering the defendant's failure to comply with court orders coupled with her allegations that her actions were justified, the court reasonably could have concluded that she would be unlikely to accept responsibility for the allegations and therefore may be likely to offend in the future. See *State* v. *Rios*, supra, 110 Conn. App. 453–54 ("Neither the statute nor our case law sets forth a test by which to evaluate the court's determination in this regard. Logically, such a determination must be reached on the basis of the facts and circumstances before the court that are relevant to predicting such future conduct."). In light of the facts brought before the court concerning the defendant, and affording every reasonable presumption in favor of the court's ruling, we cannot conclude that the court's decision constituted an abuse of discretion.

The judgment is reversed only as to the conviction of interfering with an officer as set forth in count four and the case is remanded with direction to vacate that conviction. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.