# STATE OF CONNECTICUT *v.* OLES J. BAPTISTE
## (AC 28718)

Lavine, Bishop and Schaller, Js.

Argued November 10, 2011—officially released February 21, 2012

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Stephen M. Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant was convicted of assault of a peace officer in violation of General Statutes § 53a-167c and two counts of interfering with an officer in violation of General Statutes § 53a-167a. On remand from our Supreme Court,[1] the defendant claims that

---

[1] In *State* v. *Baptiste*, 114 Conn. App. 750, 751, 970 A.2d 816 (2009), rev'd, 302 Conn. 46, 23 A.3d 1233 (2011), the defendant claimed that "(1) the trial court inadequately instructed the jury on the essential elements of §§ 53a-167a and 53a-167c, and, consequently, the instruction relieved the state of its burden of proving beyond a reasonable doubt every element set forth in the statutes, and (2) the court improperly permitted the state to question him about his fourteen prior arrests for interfering with a police officer and engaging police officers in pursuit." The defendant acknowledged that he had not objected to the court's jury instructions on the charges of assault of a peace officer and interfering with an officer and, therefore, sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *State* v. *Baptiste*, supra, 761. This court affirmed the judgment of the trial court, concluding as to the first claim that the defendant waived his claim under the standard set forth in *Golding*, and as to the second claim, that we could not conclude that the court abused its discretion on the basis of relevance, the only reviewable ground for appeal. Id., 764, 772. The defendant filed a petition for certification to appeal to the Supreme Court, limited to the issue of whether this court properly concluded that "the defendant waived any constitutional or plain error claim that the trial court's jury instructions on the charge of assault of a police officer in violation of . . .

the trial court erred in failing to instruct the jury that it had to consider the reasonableness of the force used by the police in determining whether the officer was acting "in the performance of his duties" at the time of the assault, thereby violating the defendant's due process rights to present a defense and to have the state prove every element of the crime charged.[2] Accordingly, the defendant seeks reversal of the judgment and an order remanding the case to the trial court for a new trial.[3] We reverse the judgment of the trial court.

The relevant factual and procedural history was set forth in our previous opinion as follows. "The jury reasonably could have found the following relevant facts. On November 29, 2005, at approximately 3 p.m., Detectives James Tetreault[4] and Corey Poore, of the Norwich police department, set up surveillance for drug related activities outside the residence of Robert L'Homme, located at 28 8th Street in Norwich. During the surveillance, the officers observed a motor vehicle with three occupants stop at L'Homme's residence. The passenger

§ 53a-167c (a) deprived him of his right to a fair trial and his right to present a defense . . . ." *State* v. *Baptiste*, 294 Conn. 910, 983 A.2d 274 (2009). The Supreme Court, on review, held that the defendant did not waive *Golding* review on his claim of instructional error and, therefore, that the judgment of this court, finding waiver, had to be reversed. *State* v. *Baptiste*, 302 Conn. 46, 57–58, 23 A.3d 1233 (2011). The Supreme Court remanded the case to this court with the following rescript: "The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings consistent with this opinion." Id., 58.

[2] The defendant also claims that the court erred in failing to instruct the jury that if it found that the officers were not "reasonably identifiable," then the jury could not find that the defendant had the requisite intent to assault an officer. Because we agree with the defendant's first claim, we need not reach this second claim.

[3] "It is well established that instructional impropriety constitutes 'trial error' for which the appropriate remedy is a new trial, rather than a judgment of acquittal." *State* v. *DeJesus*, 288 Conn. 418, 434, 953 A.2d 45 (2008).

[4] At the time of trial, Tetreault was a sergeant with the Norwich police department.

in the front seat exited the vehicle, entered the residence and in less than one minute returned to the vehicle. The officers followed the vehicle for approximately 200 or 300 yards until it left the road. The officers approached the vehicle and spoke with the occupants, who admitted that they had purchased crack cocaine from a Jamaican male inside of L'Homme's residence. At that time, the officers decided to return to L'Homme's residence with another detective, Robert Blanch, to investigate the drug dealer.

"The officers wore plain clothes, but they displayed their badges.[5] They knocked on the front door, and L'Homme allowed them inside. The officers encountered the defendant in a bedroom located in the back of the apartment. Poore, recognizing the defendant from numerous previous contacts and observing him trying to chew and swallow something, believed that he was trying to swallow crack cocaine. Poore also identified a female in the bedroom with the defendant as a known crack cocaine user and prostitute. Poore did not verbally identify himself as a police officer because he and the defendant knew each other well.[6] Poore asked the defendant for consent to search him, and the defendant consented. Poore also informed the defendant that the police had information that he was dealing crack cocaine out of the apartment. The defendant did not respond. After Poore conducted a standard search and did not find contraband, he turned his attention to the female occupant in the room. Poore began speaking with the female, and the defendant tried to push his way out of the bedroom. Blanch and Poore tried to

---

[5] Poore and Blanch wore their badges on their belts, and Tetreault wore his badge on a chain around his neck.

[6] Poore had known the defendant for almost thirteen years at the time of the defendant's arrest. When Poore was a bicycle patrol officer, he encountered the defendant almost daily. In addition, when Poore would shop at the defendant's place of business, the defendant would approach him, and it was clear that he recognized Poore as a police officer.

calm the defendant, but the defendant became more excited and aggravated. The defendant continued to push by the officers and encountered Tetreault in the kitchen area.

"The officers continued to try to gain control of the situation by calming down the defendant so that they could continue their investigation. The defendant was combative and used his feet to push [himself] off of kitchen appliances. All three officers were engaged in a physical struggle to maintain control over the situation. Tetreault tried to prevent the defendant from pushing past him by grabbing the defendant's shoulders and then wrapped his arm around the defendant's shoulder and chest areas. The defendant bit Tetreault on his lower left bicep, causing pain and bruising. Tetreault yelled out and stated that the defendant had bitten him. At that time, the officers decided to arrest the defendant for assaulting Tetreault. The officers had to subdue the defendant physically by bringing him to the floor and handcuffing him.

"The officers took the defendant outside the apartment where a uniformed officer, Steven Lamantini, had arrived with a marked patrol car. After the defendant was taken outside, he continued to kick, scream and act aggressively. The defendant was placed in the cruiser, where he tried to kick out the back window of the cruiser and damaged a rear dash light by slamming his head into it. Lamantini removed the defendant from the vehicle, and the defendant attempted to bite Lamantini.[7] The defendant was not compliant with Lamantini, who ordered the defendant to stop resisting. Another officer arrived with pepper spray and employed it on the defendant. At that point, the defendant calmed down and was transported to the police station.

[7] The defendant attempted to bite Lamantini's left arm but was able only to close his teeth on Lamantini's uniform shirt.

"Tetreault was treated at William W. Backus Hospital, receiving inoculations, a precautionary baseline test for the human immunodeficiency virus and treatment and bandaging of his wound. The bite wound was approximately two inches in diameter and caused a scar. The defendant was charged with assaulting Tetreault and interfering with Poore and Lamantini." *State v. Baptiste*, 114 Conn. App. 750, 752–54, 970 A.2d 816 (2009), rev'd, 302 Conn. 46, 23 A.3d 1233 (2011).

As set forth in our previous opinion, the defendant testified as to the following facts.[8] "At approximately 3 p.m. on November 29, 2005, the defendant was in Norwich on business and saw L'Homme on the street.[9] L'Homme waved to the defendant, and the defendant pulled his vehicle over to speak with him. The defendant asked L'Homme about the injuries to L'Homme's face, which looked like the result of a beating. L'Homme stated that he could not stay outside but invited the defendant into his apartment to talk. L'Homme and the defendant entered the apartment and proceeded to the bedroom where a woman was sitting. L'Homme introduced her as his girlfriend, gave the defendant beer and sat down next to the woman. The defendant sat down in a chair in front of L'Homme and the woman.

"The defendant also testified that less than five minutes later there was a knock at the door that L'Homme got up to answer. A man the defendant did not know[10] entered the room, looked at the defendant and asked, 'what you got?' The man did not identify himself as a police officer. The man touched the defendant's pocket, did not find anything and continued to

---

[8] The defendant spent the first seventeen years of his life in Haiti. Although he spoke some English, the defendant was assisted at trial by an interpreter.

[9] At the time of the incident, the defendant had known L'Homme for five or six years.

[10] The defendant testified on cross-examination that Poore was the man who entered the room. The defendant also testified that he had never seen Poore before he walked into L'Homme's bedroom on November 29, 2005.

search the bedroom, including a jacket on the bed. The man started talking to the woman, and they began arguing. The defendant believed that the man was either a robber, the woman's boyfriend or the person who had assaulted L'Homme. The defendant did not consider that the man who patted him down might be a police officer.

"Additionally, the defendant testified that he did not want to get involved and got up to find L'Homme in the living room. When the defendant tried to leave, someone started choking him from behind. The defendant testified that the man 'must [have been] sneaking in the house somewhere' to get behind the defendant when he was walking toward the front door of the apartment. The defendant testified that he was scared for his life, so he pulled the man's arm off of his neck and bit the man's arm.[11] The first man came running into the living room, catching the defendant's legs, and the defendant slipped and slammed into the ground. A third man joined in the struggle, and the three men held the defendant's feet and arms and kicked him in the face and beat him.

"The defendant testified that he first thought the men might be police officers when they handcuffed him. At that point, he kept calling out, 'brother, brother, why do this to me, why doing this to me?' After they handcuffed him, the three officers continued to assault him, even after they had placed him in the back of a patrol car.

"Finally, the defendant testified that at no point had the men identified themselves as police officers and that none of the men had police badges showing. As soon as he found out that they were police officers, he

---

[11] The defendant testified that he thought that he was going to die because he could not breathe and that he had a seizure.

apologized and began begging." Id., 755–57. Additional facts will be set forth as necessary.

We begin our analysis with the standard of review of the defendant's claim. "The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . .

"When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citations omitted; internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 797, 785 A.2d 573 (2001).

"In determining whether the jury was misled, it is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Ash*, 231 Conn. 484, 493–94, 651 A.2d 247 (1994). "[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that

injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *State* v. *Leroy*, 232 Conn. 1, 8, 653 A.2d 161 (1995).

The defendant claims that the court improperly failed to instruct the jury that it had to find that the police officers utilized reasonable force to determine that they were acting in the performance of their duties at the time of the assault. In addition, the defendant claims that the court's instruction was inadequate because it failed to instruct on General Statutes §§ 53a-22 and 53a-23 regarding the right to resist the use of excessive force. The defendant did not waive this claim,[12] but the record does not reflect that he properly preserved the claim for our review, as he did not raise the present claim before the trial court. Thus, we must determine whether the defendant's unpreserved claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[13]

The first prong of *Golding* is satisfied, as the record is adequate for review. With regard to the second prong of *Golding*, the defendant argues that he was deprived of his due process right to have the state prove beyond

---

[12] See *State* v. *Baptiste*, supra, 302 Conn. 49.

[13] "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]. . . . A party is obligated . . . affirmatively to request review under these doctrines. . . . Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 324–25, 977 A.2d 209 (2009).

a reasonable doubt all of the elements of the crime with which he was charged because the court failed to instruct the jury regarding reasonable force. The defendant argues that whether the police used reasonable force is a necessary factor in the jury's correlative determination of whether the officer was acting "in the performance of his duties," a finding that the jury must make beyond a reasonable doubt in order to convict the defendant. Our Supreme Court has concluded that "[i]t is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged"; *State* v. *Williamson*, 206 Conn. 685, 708, 539 A.2d 561 (1988); and in some instances, requires a detailed instruction on the elements. See *State* v. *Davis*, 261 Conn. 553, 571–72, 804 A.2d 781 (2002). Thus, the defendant's claim that the jury was not instructed on an essential element of an offense is of constitutional magnitude; see *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995); and, therefore, satisfies *Golding*'s second prong. Accordingly, we will now review the merits of the claim.

Turning to *Golding*'s third prong, we must determine whether a constitutional violation clearly exists and clearly deprived the defendant of a fair trial. "Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that clearly deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction." *State* v. *Tate*, 59 Conn. App. 282, 286, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000). As noted, the defendant claims that the court improperly failed to instruct the jury that it had to find that the police officers utilized reasonable force to determine that they were acting in the performance of their duties at the time of the assault. In addition, the defendant claims that the court's instruction was inadequate because it failed to instruct on §§ 53a-22 and

53a-23 regarding the right to resist the use of excessive force. We agree.

The defendant filed a request to charge regarding self-defense under General Statutes § 53a-19 and then excepted to the court's denial of his request. The court's charge included no mention of self-defense, nor did the charge discuss the question of reasonable force by the police. As to the instructions given by the court, the defendant challenges the following portion regarding the crime of assault of a peace officer: " 'For you to find the defendant [guilty] of this charge, the state must have proven the following elements: one, the victim of the assault was a reasonable identifiable peace officer or known to the defendant as a peace officer; two, the conduct of the defendant occurred while that peace officer was acting in the performance of his duties; three, that the defendant had the specific intent to prevent the peace officer from performing his lawful duties; and four, that the defendant caused physical injury to the peace officer. . . .

" 'The phrase "in the performance of his duties" means that the police officer is simply acting within the scope of what he's employed to do. The test is whether the police officer was acting in his capacity as an officer or engaging in some frolic of his own. You will make this determination based on the circumstances of this case. . . .

" 'If the officer is acting under a good faith belief that he is carrying out his duty and if his actions are reasonably designed to that end, he's acting in the performance of his duties. The phrase, again, "in the performance of his duties," means a police officer simply acting within the scope of his employment. The test is whether the police officer was acting in his capacity as a police officer or—as I said earlier—engaging in a frolic of his own. You will make that determination

based on the circumstances of the case.' " *State* v. *Baptiste*, supra, 114 Conn. App. 759–61.

As a preliminary matter, in determining whether the defendant is entitled to an instruction that reasonable force is a requisite component to satisfy the element of "in the performance of his duties," we must first conclude that the defendant propounded a theory of excessive force to warrant such an instruction. It is well settled that "a defendant is entitled to have instructions on a defense for which there is evidence produced at trial to justify the instruction, no matter how weak or incredible the claim." (Internal quotation marks omitted.) *State* v. *Brodia*, 129 Conn. App. 391, 400, 20 A.3d 726, cert. denied, 302 Conn. 913, 27 A.3d 373 (2011). On the basis of a thorough review of the record, we conclude that the defendant propounded a theory of excessive force.[14]

By way of illustration, during the trial, the defendant testified that Tetreault grabbed him by his neck and choked him. He further claimed that he was unable to breathe and believed that his life was in danger. The defendant testified: "He grabbed me like this so when he grabbed me I don't know and I try to get him off my neck so he keep going (making choking noises) and I'm going to die now. I can't breath no more. . . . I was going to get killed. I was in there with to be dead because I can't breathe no more. I had seizure. . . . The tall big one grabbed me after the one who got bit finished with me. He grabbed me behind my clothes and he dragged me like a dog, like a dog on the ground

[14] The defendant also propounded a theory of misidentification. Even if the jury could have interpreted his theories of defense as conflicting, he was nevertheless, as a matter of law, entitled to offer them. See *State* v. *Harris*, 189 Conn. 268, 273, 455 A.2d 342 (1983); *State* v. *Miller*, 55 Conn. App. 298, 301, 739 A.2d 1264 (1999), cert. denied, 252 Conn. 923, 747 A.2d 519 (2000).

outside." In addition, the defendant claimed that he received stitches at the hospital after his arrest.

Defense counsel also elicited testimony from L'Homme that the police officers "seemed to attack [the defendant]." Further, during the final portion of his closing argument, defense counsel alleged that the police had engaged in misconduct during the apprehension of the defendant. He stated: "And when we questioned everybody, everybody has respect for the police here but there was [an] unfortunate situation that happened, but I think it would have been avoidable if the police had handled their own work right in this particular instance." These statements, in conjunction with defense counsel's questioning of the officers regarding the defendant's subsequent hospitalization and the specific type of hold that Tetreault utilized in subduing the defendant, are sufficient to establish that the defendant adequately propounded a defense theory of excessive force sufficient to warrant an instruction on reasonable force by the police. In sum, the defendant presented adequate evidence at trial to warrant a reasonable force instruction.[15]

Having determined that the defendant asserted a claim of excessive force, we now assess the sufficiency of the instruction as given. The defendant requested a self-defense instruction, which was properly denied.[16]

[15] This case stands in contrast to *State* v. *Vilchel*, 112 Conn. App. 411, 431–32, 963 A.2d 658, cert. denied, 291 Conn. 907, 969 A.2d 173 (2009), in which defense counsel explicitly asserted, on the record, that he was not propounding a theory of excessive force. Under those circumstances, where it is abundantly clear from the record that the defendant has not asserted such a theory, this court has concluded that it is not necessary for the court to give an instruction in compliance with the standard set forth in *State* v. *Davis*, supra, 261 Conn. 571. See *State* v. *Vilchel*, supra, 433–34. Such is not the case at hand.

[16] Our Supreme Court has concluded that a defendant charged only with violating § 53a-167a (a) or § 53a-167c (a) is not entitled to a self-defense instruction. *State* v. *Davis*, supra, 261 Conn. 573.

Our Supreme Court has determined, however, that in a case in which a defendant is charged with assault of a peace officer or interfering with an officer, in lieu of a self-defense instruction, the court must provide "a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest, whether the arrest itself is legal or illegal . . . ." *State* v. *Davis*, supra, 261 Conn. 571. In assessing what properly constitutes a detailed instruction regarding the element of in the performance of an officer's duty, we must consider the components that constitute that element. We have concluded that an officer's exercise of reasonable force is inherent in the performance of his duties. In other words, "unreasonable and unnecessary force by a police officer would place the actions outside the performance of that officer's duties." *State* v. *Turner*, 91 Conn. App. 17, 23 n.10, 879 A.2d 471, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005); see also *State* v. *Salters*, 78 Conn. App. 1, 6, 826 A.2d 202 ("excessive or unreasonable physical force by the officer would place his actions outside the performance of his duties"), cert. denied, 265 Conn. 912, 831 A.2d 253 (2003). Because reasonable force is an inherent component of the performance of an officer's duties, we conclude that an instruction regarding reasonable force is required to comply with the standard set forth in *Davis*.

Viewed in the context of the factual issues raised at trial, the instructions given by the court in this instance failed to provide a sufficiently detailed explanation of one of the elements of the crime of assault of a peace officer. Our Supreme Court has determined that a defendant is entitled to a detailed instruction on the element of "in the performance of his duties" in lieu of an instruction regarding self-defense. *State* v. *Davis*, supra, 261

Conn. 571 (concluding that "the failure to provide such instructions when the defendant has presented evidence, no matter how weak or incredible, that the police officer was not acting in the performance of his duty, effectively operates to deprive a defendant of his due process right to present a defense"). Instead, in instructing the jury on the element of "in the performance of his duties," the court gave a basic definition of the phrase but improperly neglected to outline the requisite component of reasonable force. In sum, the teaching of *Davis, Turner* and *Salters* read and understood together as a total body of law, persuades us that the court's failure to instruct the jury on reasonable force as part and parcel of the officer's performance of his duties amounted to a violation of the defendant's due process rights.[17]

We are persuaded, therefore, that under the circumstances presented by this case, further explanation of that essential element of the crime was necessary to fairly and completely apprise the jury of the pertinent law regarding the charged offenses. Further, reviewing the charge as a whole, we conclude that due to the failure to provide said instruction, it is reasonably possible that the jury was misled regarding the requisite components to satisfy the element of "in the performance of his duties." In this respect, it is reasonably possible that the jury was misled to believe that the state could meet its burden regarding the element of "in the performance of his duties" irrespective of whether it proved that the officer utilized a reasonable degree of force. Because we determine that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial, we conclude that the defendant has satisfied the third prong of *Golding*.

[17] Cf. *State* v. *Jay*, 124 Conn. App. 294, 312–13, 4 A.3d 865 (2010) (concluding that instruction was sufficient where court instructed jury regarding whether degree of force used by officer was reasonable), cert. denied, 299 Conn. 927, 12 A.3d 571 (2011).

With regard to *Golding*'s fourth prong, the state argues that the court's ruling was harmless beyond a reasonable doubt because "there [was] no reasonable possibility that the failure to so instruct [on §§ 53a-22 and 53a-23] misled the jury." In this regard, the state argues that the instruction substantively was the same as § 53a-22 (b). "[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence*, such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Vazquez*, 87 Conn. App. 792, 796, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005). Our Supreme Court has concluded that in lieu of a self-defense instruction, the court must give a detailed instruction of the element of "in the performance of his duties." *State* v. *Davis*, supra, 261 Conn. 571. We conclude that one factor for consideration that must be included in the instruction is that of reasonable force. Because the jury instruction failed to provide the jury with an explanation of reasonable force in lieu of the requested self-defense instruction and because this instruction would have served as the defendant's defense to one of the crimes charged, we cannot conclude that the constitutional violation was harmless beyond a reasonable doubt. Further, we note that the use of reasonable force was not uncontested or supported by overwhelming evidence.

For all of the foregoing reasons, we conclude that the defendant has prevailed under *Golding* and that he is thus entitled to a new trial.

The judgment is reversed and the case is remanded to the trial court for a new trial.

In this opinion the other judges concurred.