******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* OLES J. BAPTISTE
(SC 18957)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald and Vertefeuille, Js.

Argued December 12, 2013—officially released January 21, 2014

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Stephen M. Carney*, senior assistant state's attorney, for the appellant (state).

*Annacarina Jacob*, senior assistant public defender, for the appellee (defendant).

*Opinion*

PER CURIAM. The defendant, Oles J. Baptiste, was convicted, after a jury trial, of assault of a peace officer in violation of General Statutes § 53a-167c[1] and two counts of interfering with an officer in violation of General Statutes § 53a-167a.[2] The trial court rendered judgment in accordance with the verdict and the defendant appealed to the Appellate Court, which initially affirmed the judgment of the trial court. *State* v. *Baptiste*, 114 Conn. App. 750, 772, 970 A.2d 816 (2009). We granted the defendant's petition for certification and subsequently determined that the defendant did not waive *Golding*[3] review on his claim of instructional error and, accordingly, reversed the judgment of the Appellate Court and remanded the case to that court for further proceedings. *State* v. *Baptiste*, 302 Conn. 46, 57–58, 23 A.3d 1233 (2011).

Upon remand, the Appellate Court reversed the judgment of the trial court and concluded that the trial court violated the defendant's constitutional rights by improperly failing to instruct the jury that it had to consider the reasonableness of the force used by the police in determining whether the officer was acting "in the performance of his duties" at the time of the alleged assault. (Internal quotation marks omitted.) *State* v. *Baptiste*, 133 Conn. App. 614, 627–28, 36 A.3d 697 (2012). Accordingly, the Appellate Court remanded the case to the trial court for a new trial. Id., 629. Thereafter, we granted the state's petition for certification to appeal from the judgment of the Appellate Court limited to the following issue: "Did the Appellate Court properly determine that the trial court's instructions to the jury regarding the charge of assault of a peace officer were inadequate?" *State* v. *Baptiste*, 304 Conn. 921, 41 A.3d 661 (2012). We conclude that certification was improvidently granted and dismiss the appeal.

The factual background of this case is set forth in the Appellate Court's opinion. *State* v. *Baptiste*, supra, 133 Conn. App. 616–21. "Detectives James Tetreault and Corey Poore, of the Norwich police department, set up surveillance for drug related activities outside the residence of Robert L'Homme, located at 28 8th Street in Norwich. During the surveillance, the officers observed a motor vehicle with three occupants stop at L'Homme's residence. The passenger in the front seat exited the vehicle, entered the residence and in less than one minute returned to the vehicle. The officers followed the vehicle for approximately 200 or 300 yards until it left the road. The officers approached the vehicle and spoke with the occupants, who admitted that they had purchased crack cocaine from a Jamaican male inside of L'Homme's residence. At that time, the officers decided to return to L'Homme's residence with another detective, Robert Blanch, to investigate the drug dealer.

"The officers wore plain clothes, but they displayed their badges. They knocked on the front door, and L'Homme allowed them inside. The officers encountered the defendant in a bedroom located in the back of the apartment. Poore, recognizing the defendant from numerous previous contacts and observing him trying to chew and swallow something, believed that he was trying to swallow crack cocaine. Poore also identified a female in the bedroom with the defendant as a known crack cocaine user and prostitute. Poore did not verbally identify himself as a police officer because he and the defendant knew each other well. Poore asked the defendant for consent to search him, and the defendant consented. Poore also informed the defendant that the police had information that he was dealing crack cocaine out of the apartment. The defendant did not respond. After Poore conducted a standard search and did not find contraband, he turned his attention to the female occupant in the room. Poore began speaking with the female, and the defendant tried to push his way out of the bedroom. Blanch and Poore tried to calm the defendant, but the defendant became more excited and aggravated. The defendant continued to push by the officers and encountered Tetreault in the kitchen area.

"The officers continued to try to gain control of the situation by calming down the defendant so that they could continue their investigation. The defendant was combative and used his feet to push [himself] off of kitchen appliances. All three officers were engaged in a physical struggle to maintain control over the situation. Tetreault tried to prevent the defendant from pushing past him by grabbing the defendant's shoulders and then wrapped his arm around the defendant's shoulder and chest areas. The defendant bit Tetreault on his lower left bicep, causing pain and bruising. Tetreault yelled out and stated that the defendant had bitten him. At that time, the officers decided to arrest the defendant for assaulting Tetreault. The officers had to subdue the defendant physically by bringing him to the floor and handcuffing him.

"The officers took the defendant outside the apartment where a uniformed officer, Steven Lamantini, had arrived with a marked patrol car. After the defendant was taken outside, he continued to kick, scream and act aggressively. The defendant was placed in the cruiser, where he tried to kick out the back window of the cruiser and damaged a rear dash light by slamming his head into it. Lamantini removed the defendant from the vehicle, and the defendant attempted to bite Lamantini. The defendant was not compliant with Lamantini, who ordered the defendant to stop resisting. Another officer arrived with pepper spray and employed it on the defendant. At that point, the defendant calmed down and was transported to the police station." (Footnote omitteds;

internal quotation marks omitted.) Id., 616–18.

"[T]he defendant testified as to the following facts. 'At approximately 3 p.m. on November 29, 2005, the defendant was in Norwich on business and saw L'Homme on the street. L'Homme waved to the defendant, and the defendant pulled his vehicle over to speak with him. The defendant asked L'Homme about the injuries to L'Homme's face, which looked like the result of a beating. L'Homme stated that he could not stay outside but invited the defendant into his apartment to talk. L'Homme and the defendant entered the apartment and proceeded to the bedroom where a woman was sitting. L'Homme introduced her as his girlfriend, gave the defendant beer and sat down next to the woman. The defendant sat down in a chair in front of L'Homme and the woman.

" 'The defendant also testified that less than five minutes later there was a knock at the door that L'Homme got up to answer. A man the defendant did not know entered the room, looked at the defendant and asked, "what you got?" The man did not identify himself as a police officer. The man touched the defendant's pocket, did not find anything and continued to search the bedroom, including a jacket on the bed. The man started talking to the woman, and they began arguing. The defendant believed that the man was either a robber, the woman's boyfriend or the person who had assaulted L'Homme. The defendant did not consider that the man who patted him down might be a police officer.

" 'Additionally, the defendant testified that he did not want to get involved and got up to find L'Homme in the living room. When the defendant tried to leave, someone started choking him from behind. The defendant testified that the man 'must [have been] sneaking in the house somewhere' to get behind the defendant when he was walking toward the front door of the apartment. The defendant testified that he was scared for his life, so he pulled the man's arm off of his neck and bit the man's arm. The first man came running into the living room, catching the defendant's legs, and the defendant slipped and slammed into the ground. A third man joined in the struggle, and the three men held the defendant's feet and arms and kicked him in the face and beat him.

" 'The defendant testified that he first thought the men might be police officers when they handcuffed him. At that point, he kept calling out, "brother, brother, why do this to me, why doing this to me?" After they handcuffed him, the three officers continued to assault him, even after they had placed him in the back of a patrol car.

" 'Finally, the defendant testified that at no point had the men identified themselves as police officers and

that none of the men had police badges showing. As soon as he found out that they were police officers, he apologized and began begging.' " (Footnotes omitted.) Id., 619–21.

The Appellate Court determined that the defendant asserted a claim of excessive force and that, in accordance with *State* v. *Davis*, 261 Conn. 553, 571–72, 804 A.2d 781 (2002), when a defendant is charged with assault of a peace officer or interfering with an officer, in lieu of a self-defense instruction, the court must provide "a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest, whether the arrest itself is legal or illegal . . . ." (Internal quotation marks omitted.) *State* v. *Baptiste*, supra, 133 Conn. App. 627.

In the present case, the trial court charged the jury that the state had to prove that the victim of the crime was a reasonably identifiable peace officer or known to the defendant as a peace officer; the conduct of the defendant occurred while that peace officer was acting in the performance of his duties; the defendant had the specific intent to prevent the peace officer from performing his lawful duties; and the defendant caused physical injury to the peace officer. The trial court instructed the jury as follows: " ' "The phrase 'in the performance of his duties' means that the police officer is simply acting within the scope of what he's employed to do. The test is whether the police officer was acting in his capacity as an officer or engaging in some frolic of his own. You will make this determination based on the circumstances of this case." ' " Id., 624.

The Appellate Court concluded that, "[v]iewed in the context of the factual issues raised at trial, the instructions given by the court in this instance failed to provide a sufficiently detailed explanation of one of the elements of the crime of assault of a peace officer. Our Supreme Court has determined that a defendant is entitled to a detailed instruction on the element of 'in the performance of his duties' in lieu of an instruction regarding self-defense. *State* v. *Davis*, supra, 261 Conn. 571 (concluding that 'the failure to provide such instructions when the defendant has presented evidence, no matter how weak or incredible, that the police officer was not acting in the performance of his duty, effectively operates to deprive a defendant of his due process right to present a defense'). Instead, in instructing the jury on the element of 'in the performance of his duties,' the court gave a basic definition of the phrase but improperly neglected to outline the requisite component of reasonable force." *State* v. *Baptiste*, supra, 133 Conn. App. 627–28. Accordingly, the Appellate Court reversed the judgment of conviction and remanded the case for a new trial. Id., 629.

On appeal to this court, the state contends that the challenged charge was adequate and if there was any error, it was harmless. After examining the entire record on appeal and considering the briefs and oral arguments of the parties, we have determined that the appeal in this case should be dismissed on the ground that certification was improvidently granted.

The appeal is dismissed.

[1] Although § 53a-167c has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2011, No. 11-175, § 4; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] We also note that § 53a-167a has been amended by the legislature several times since the events underlying the present case. See, e.g., Public Acts 2010, No. 10-110, § 51. Those amendments, however, have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).