******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* VAUGHN OUTLAW
(AC 38419)

DiPentima, C. J., and Lavine and Harper, Js.

*Syllabus*

Convicted of the crime of assault of public safety personnel arising out of an incident in which the defendant spat on a correction officer, the defendant appealed to this court. The defendant testified that the correction officer used excessive force when escorting the defendant to and from his cell, after which the defendant spat on the officer. He claimed that any unwarranted or excessive force was not in the performance of the officer's duties and that the court committed plain error when it did not provide detailed language in its instructions to the jury as to that element of the crime. The state claimed, inter alia, that the defendant explicitly waived his claim of instructional error. *Held*:

1. Contrary to the state's claim, the record was unclear as to whether the defendant explicitly waived his claim that the trial court should have given a detailed instruction concerning whether the correction officer was acting in the performance of his duties when he allegedly used unnecessary or unreasonable force; the colloquy between defense counsel and the court concerning the relevant instruction was ambiguous as to whether the defense counsel was affirming that he had not requested a self-defense instruction or whether he was waiving an instruction on unnecessary or unreasonable force.

2. The defendant could not prevail on his unpreserved claim that the trial court committed plain error by failing to instruct the jury that any unwarranted or excessive force by the correction officer was not within the performance of his duties; the defendant failed to establish the required patent or readily discernible error in the jury instruction as to warrant the extraordinary remedy of reversal, nor did he demonstrate that the failure to include that language resulted in manifest injustice, especially given that the challenged actions of the correction officer occurred prior in time to the defendant's conduct in spitting on the officer.

Argued October 4, 2017—officially released January 23, 2018

*Procedural History*

Substitute information charging the defendant with the crime of assault of public safety personnel, brought to the Superior Court in the judicial district of Tolland, and tried to the jury before the court, *Graham, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*Mary A. Beattie*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Andrew Reed Durham*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Vaughn Outlaw, appeals from the judgment of conviction, rendered after a jury trial, of assault public safety personnel in connection with his assault of an employee of the Department of Correction (department) in violation of General Statutes § 53a-167c (a) (5).[1] On appeal, the defendant asserts that the court committed plain error when it did not include detailed language on the use of unwarranted or excessive force as part of its instructions to the jury on the second element of § 53a-167c (a) (5), which pertains to whether the employee was acting in the performance of his duties. The state contends that the defendant explicitly waived his claim at trial and failed to demonstrate that the court committed an obvious error resulting in manifest injustice. Because we agree with the state's latter argument, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 1, 2013, correction officers Thomas Langlois (victim) and Katie McClellan were escorting the defendant back from the shower room to his cell at Northern Correctional Institute. After returning the defendant back to his cell, the victim removed the defendant's leg shackles and stood outside the cell door.[2] McClellan and the victim testified that the defendant, who was instructed to remain on the bed, followed the victim toward the cell door and spat on the victim's face, mouth and eyes before the door closed.[3] Security footage of the incident was shown to the jury.

On April 8, 2015, following a jury trial, the defendant was convicted of assault of public safety personnel in violation of § 53a-167c (a) (5). On June 25, 2015, the court sentenced the defendant to forty-two months of incarceration to be served consecutively with the sentence he was already serving. This appeal followed.

On appeal, the defendant asserts that because he had testified that the victim used excessive force, the court committed plain error when it failed to include in its jury instructions, as part of the second element of § 53a-167c (a) (5), the "detailed language explaining that any unwarranted or excessive force is not within the performance of the officer's duties." (Emphasis omitted.) As a result of this omission, the defendant argues the jury may have been misled into believing that the victim was performing his duties as a correction officer when he allegedly mishandled and "monkey pawed" the defendant while escorting him to and from his cell. See footnote 3 of this opinion. The state contends, inter alia, that the defendant cannot establish that the court committed plain error by failing to provide the requested instruction because the defendant explicitly informed the court that he was not seeking a detailed instruction on self-defense to the assault charge.

The following additional facts are necessary for our discussion. The record reflects that the court had provided counsel with a draft of its proposed jury instructions on April 2, 2015. Thereafter, on April 6, 2015, the court held an in-chambers conference to discuss "some things relating to the charge . . . ." On April 7, 2015, during an on-the-record discussion between the court and defense counsel regarding the jury instructions, the following exchange occurred:

"The Court: There is sometimes a self-defense portion utilized in defining in the performance of duties. As I understand it, that's not being requested by the defendant in this case; am I correct?

"[Defense Counsel]: Yes, Your Honor.

"The Court: So that's out. All right."

On April 8, 2015, after completing its charge, the court asked the parties, outside the presence of the jury, if they had any exceptions to the charge.[4] The defendant objected only to the intent element of the charge.[5]

I

As an initial matter, we address the state's assertion that the defendant explicitly waived his claim by "inform[ing] the trial court that he was not seeking the instruction that he now claims was plain error not to provide." We conclude that although the defendant is not entitled to an instruction based on a theory of self-defense, it is unclear from the record whether the defendant explicitly waived his claim that the court failed to include a detailed instruction on a theory of defense that the victim was not acting within the performance of his duties when he allegedly used unreasonable or unnecessary physical force.

Both parties agree that "when a defendant has been charged only with violations of § 53a-167c . . . he is not entitled to an instruction on self-defense." *State* v. *Davis*, 261 Conn. 553, 573, 804 A.2d 781 (2002); *State* v. *Baptiste*, 133 Conn. App. 614, 626 n.16, 36 A.3d 697 (2012), appeal dismissed, 310 Conn. 790, 83 A.3d 591 (2014); *State* v. *Salters*, 78 Conn. App. 1, 5, 826 A.2d 202, cert. denied, 265 Conn. 912, 831 A.2d 253 (2003). Rather, "[o]ur Supreme Court has determined that in a case in which a defendant is charged with assault of a peace officer or interfering with an officer, *in lieu of a self-defense instruction*, the court must provide a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *Dunstan*, 145 Conn. App. 384, 390, 74 A.3d 559, cert. denied, 310 Conn. 958, 82 A.3d 626 (2013). "This court has further concluded that an officer's exercise of reasonable force is inherent in

the performance of duties, and therefore unreasonable and unnecessary force by a police officer would place the actions outside the performance of that officer's duties." Id.; see also *State* v. *Davis*, supra, 571 ("a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest . . . stands in lieu of a self-defense instruction"); *State* v. *Baptiste*, supra, 627 ("[o]ur Supreme Court has determined that a defendant is entitled to a detailed instruction on the element of 'in the performance of his duties' in lieu of an instruction regarding self-defense"); *State* v. *Salters*, supra, 9 ("[t]he proper defense . . . was that [the correction officer] was not acting within the performance of his duties when he used physical force on the defendant").

"The rationale behind our Supreme Court's determination in *Davis* was based on the requirement that the state must prove beyond a reasonable doubt that the officer was acting in the performance of his duties as an element of § 53a-167c and the fact that excessive or unreasonable physical force by the officer would place his actions outside the performance of his duties. . . . The defendant would be entitled to an acquittal if the state failed to prove that the use of force was within the performance of the officer's duties." (Citation omitted; footnote omitted.) *State* v. *Salters*, supra, 78 Conn. App. 5–6. "A correctional officer, therefore, is statutorily authorized to use reasonable physical force in the performance of his duties. Clearly, if the defendant claimed that the force used was excessive or unnecessary, the proper *defense* in this case would have been that [the correction officer's] use of physical force on the defendant was not in the performance of his duties." (Emphasis added.) Id., 8.[6]

For this reason, the colloquy that occurred regarding the defense instruction appears ambiguous. When the court asked whether the defendant was seeking a "self-defense portion utilized in defining in the performance of duties" and requested clarification that it is "not being requested by the defendant in this case," defense counsel responded "yes." One interpretation of defense counsel's response is that the defendant explicitly was affirming that he had not requested a self-defense instruction, to which the parties knew, as a matter of law, he was not entitled. Another interpretation is that the defendant explicitly was waiving his claim of unreasonable or unnecessary physical force, because the court's question focused specifically on "defining in the performance of duties" as pertaining to the second element of § 53a-167c. See footnote 6 of this opinion. In the absence of contrary evidence, "[j]udges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *In re Harlow P.*, 146 Conn. App. 664, 674 n.3, 78 A.3d 281, cert. denied,

310 Conn. 957, 81 A.3d 1183 (2013); accord *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Nevertheless, on the basis of this brief colloquy alone, the record is unclear as to whether the defendant was (1) agreeing with the court that he was not entitled to a theory of self-defense; (2) explicitly waiving his claim for a detailed instruction on a defense of unreasonable or unnecessary physical force in defining the performance of duties; or (3) doing both. Although we are unable to make a determination as to explicit waiver, for the reasons set forth in part II of this opinion, we conclude that the defendant cannot prevail on his claim of plain error.

## II

The defendant seeks to prevail on his unpreserved claim of instructional error pursuant to the plain error doctrine. We initially note that, in *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), our Supreme Court concluded that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal."

Our review of the record shows that the court gave the parties its draft instructions five days in advance, provided ample opportunity for their review and solicited comments from counsel. The defendant raised an objection only to the intent element of the jury charge.[7] Although the record is unclear as to whether the defendant explicitly waived his claim of instructional error, he nevertheless implicitly waived his claim pursuant to the standard set forth in *Kitchens*. Recently, however, our Supreme Court reasoned in *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017), that a *Kitchens* waiver does not foreclose claims of plain error. As such, we consider the defendant's claim of instructional error under the plain error doctrine.

"It is well established that the plain error doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved [and nonconstitutional in nature], are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's

judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." (Footnote omitted; internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 595–96, 134 A.3d 560 (2016).

There are two prongs of the plain error doctrine; an appellant cannot prevail under the plain error doctrine "unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis in original; internal quotation marks omitted.) Id., 597; accord *State* v. *McClain*, supra, 324 Conn. 812. "With respect to the first prong, the claimed error must be patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . With respect to the second prong, an appellant must demonstrate that the failure to grant relief will result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Jackson*, 178 Conn. App. 16, 20–21,     A.3d (2017).

In the present case, the defendant states: "Plain error occurred when the trial court did not instruct the jury that any unwarranted or excessive force by [the victim] was not within the performance of his duties. This instructional language was required by the facts of the case and settled case law."[8] The essence of the defendant's argument is that because he had testified that the victim mishandled and "monkey pawed" him—allegations of unwarranted or excessive force—the victim was not acting in performance of his duties as a correction officer when the defendant spat on the victim; thus, a reasonable jury could determine that the second element of § 53a-167c was not satisfied when the assault occurred. The defendant contends that the court failed to provide the detailed instruction in element two of the Connecticut Criminal Jury Instructions 4.3-1.[9]

"To prevail under the first prong of a plain error analysis, an appellant must demonstrate that the alleged error is obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the [appellant] simply to demonstrate that his position is correct. Rather, the [appellant] must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Jackson*, supra, 178 Conn. App. 24. The court's instruction to the jury, which appears to mirror the criminal jury instructions, instructed that "there was testimony that [the victim] had concluded escorting [the defendant] to his cell from

the shower area at the time of the alleged saliva, spitting or hurling." The jury heard testimony from McClellan, the victim and the defendant regarding the events surrounding the assault and made a credibility determination. More importantly, the defendant never raised this defense of unreasonable or unnecessary physical force at any point during the trial proceedings.

We also note a temporal disconnect in the defendant's argument. The defendant argues that because the victim mishandled him while escorting him to and from the shower room and "monkey pawed" him after taking off his leg shackles—actions that occurred and concluded prior in time to his spitting on the victim while he was standing outside the cell door—the victim therefore was not acting in the performance of his duties at the time of the assault. This retaliatory conduct stands in contrast to the application of this defense as discussed in *State* v. *Davis*, supra, 261 Conn. 557 (defendant fought with police officers during arrest); *State* v. *Baptiste*, supra, 133 Conn. App. 618 (defendant fought with police officers during drug investigation); *State* v. *Salters*, supra, 78 Conn. App. 3 (defendant fought with correction officers during melee). We conclude that the defendant has not established the required patent or readily discernible error in the jury instruction as to warrant the extraordinary remedy of reversal.

In summary, under the plain error doctrine, we do not find that the court committed any error, let alone error "so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Jamison*, supra, 320 Conn. 596. Nor has the defendant demonstrated that failure to include the detailed language on the use of unreasonable or unnecessary physical force resulted in manifest injustice. The court instructed the jury in accordance with the elements of § 53a-167c, and the defendant did not raise or request any detailed instruction on a defense. "The charge was presented to the jury in such a way that no injustice was done to the defendant." *State* v. *Salters*, supra, 78 Conn. App. 9. Accordingly, the defendant cannot prevail on his claim of plain error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety . . . personnel when, with intent to prevent a reasonably identifiable . . . employee of the Department of Correction . . . from performing his or her duties, and while such . . . employee . . . is acting in the performance of his or her duties . . . (5) such person throws or hurls, or causes to be thrown or hurled, any bodily fluid including, but not limited to, urine, feces, blood or saliva at such . . . employee . . . ."

[2] Northern Correctional Institute protocol requires an inmate under full restraint status to have his legs shackled and hands cuffed behind his back during transportation to and from the shower room. Once returned to his cell, the leg shackles are removed while the inmate kneels on the bed. The inmate remains on the bed until the officer leaves the cell and the door is secured. The handcuffs are removed through the food trap in the door.

[3] In contrast, the defendant testified that after the victim removed his leg

shackles, the victim struck the defendant with the leg shackles wrapped around his fist, also known as a "monkey paw." In response, the defendant followed the victim toward the door while calling him "a few names." The defendant maintained that he did not spit on the victim. Additionally, the defendant testified that he objected to the victim's handling and controlling of his movements during escort to the shower.

[4] The court instructed the jury as follows: "The defendant is charged with assault on public safety personnel . . . . The statute [defining] this offense reads in pertinent part as follows: A person is guilty of assault of public safety personnel when, with intent to prevent a reasonably identifiable employee of the Department of Correction from performing his duties, and while said correction officer was acting in the performance of his duties, such person threw or hurled or caused to be thrown or hurled any bodily fluid including, but not limited to urine, feces, blood or saliva at a correction officer.

"For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt: Element one, assault of officer. The first element is that the person allegedly assaulted, [the victim], was a reasonably identifiable Department of Correction employee. In addition, [he] had to be reasonably identifiable as a correction officer.

* * *

"Element two, in the performance of duties. The second element is that the conduct of the defendant occurred while . . . [the victim] was acting in the performance of his duties. The phrase, 'in the performance of his official duties,' means that the correction employee was acting within the scope of what he's employed to do and that his conduct was related to his official duties.

"The question of whether he was acting in good faith in the performance of his duties is a factual question for you to determine on the basis of the evidence in the case.

"In this case, there was testimony that [the victim] had concluded escorting [the defendant] to his cell from the shower area at the time of the alleged saliva, spitting or hurling.

"Element number three, intent to perform. The third element is that the defendant had specific intent to prevent [the victim] from performing his lawful duties. . . .

"Element four, by certain means. The fourth element the defendant hurled or caused to be hurled a bodily fluid, namely, saliva, at the correction officer."

[5] After the jury was excused and the court had noted defense counsel's exception to the intent element, the following exchange occurred:

"The Court: So I note your exception. Anything else?

"[The Prosecutor]: Nothing from the state.

"[Defense Counsel]: Thank you, Your Honor.

"The Court: You're welcome. All right. And for the record, counsel's already confirmed they've reviewed the charge, the exhibits and the information. I'm correct, am I not?

"[The Prosecutor]: Correct, Your Honor.

"The Court: Correct?

"[Defense Counsel]: I've seen everything, Your Honor. I'm trying to write and listen.

"The Court: I understand, but I mean you've seen it. All right. You approved it, so, all right. Let's bring the jurors back in." On appeal, the defendant is not challenging the intent element of the charge.

[6] See element two of "Interfering with an Officer—§ 53a-167a," Connecticut Criminal Jury Instructions 4.3-1, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited January 16, 2018); element two of "Assault of Public Safety, Emergency Medical, Health Care, or Public Transit Personnel—§ 53a-167c," Connecticut Criminal Jury Instructions 4.3-3, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited January 16, 2018).

We note the difference between the theory of self-defense and a defense of unreasonable or unnecessary physical force. "Under a theory of self-defense, a criminal defendant basically admits engaging in the conduct at issue, but claims that that conduct was legally justified." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 539, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010). "A theory of self-defense is a justification defense . . . [that] represents a legal acknowledgment that the harm caused by otherwise criminal conduct is, under special justifying circumstances, outweighed by the need to avoid an

even greater harm or to further a greater societal interest." (Internal quotation marks omitted.) Id. A theory of self-defense involves the defendant admitting to the conduct at issue, e.g., assaulting the victim, while justifying the use of force.

In contrast, a defense of unreasonable or unnecessary physical force, by operation, focuses on the victim's actions during the assault, e.g., whether the victim was acting within the performance of his or her duties. The defense applies regardless of whether the defendant admits to the assaultive conduct because it negates the second element of assault on a correction officer and "[t]he defendant would be entitled to an acquittal if the state failed to prove that the use of force was within the performance of the officer's duties." *State* v. *Salters*, supra, 78 Conn. App. 6. Furthermore, our case law describes the detailed instruction for "in the performance of duties" as standing in lieu of a self-defense instruction. *State* v. *Davis*, supra, 261 Conn. 571; see generally D. Borden & L. Orland, 5A Connecticut Practice Series: Criminal Jury Instructions (4th Ed. 2016-2017 Supp.) § 14.2, p. 205–207.

[7] See footnote 5 of this opinion.

[8] The defendant specifically relies on the following: "In effect, a detailed instruction that the state must establish that the police officer had been acting in the performance of his duty and that a person is not required to submit to the unlawful use of physical force during the course of an arrest, whether the arrest itself is legal or illegal, stands in lieu of a self-defense instruction in such cases. Consequently, the failure to provide such instructions when the defendant has presented evidence, no matter how weak or incredible, that the police officer was not acting in the performance of his duty, effectively operates to deprive a defendant of his due process right to present a defense." *State* v. *Davis*, supra, 261 Conn. 571.

[9] The instruction states: "In determining whether the officer was acting in the performance of (his/her) duties, you must consider another provision in our law that justifies the use of physical force by correction officers. That statute provides that an authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is reasonable and authorized by the rules and regulations of the department of correction.

"If you find that the force used by the officer was not reasonable, you will find that <insert name of officer> was not acting within the performance of (his/her) official duties while attempting to (arrest / prevent the escape of) the defendant." (Emphasis omitted; footnote omitted.) Connecticut Criminal Jury Instructions, supra, 4.3-1.

We note that the preamble of the criminal jury instructions found on the Judicial Branch website clearly states that it "is intended as a guide for judges and attorneys" and that "[t]he use of these instructions is entirely discretionary and their publication by the Judicial Branch is not a guarantee of their legal sufficiency." Connecticut Criminal Jury Instructions, available at http://www.jud.ct.gov/ji/Criminal/Criminal.pdf (last visited January 16, 2018). See, e.g., *State* v. *Reyes*, 325 Conn. 815, 822 n.3, 160 A.3d 323 (2017); *State* v. *Hall-Davis*, 177 Conn. App. 211, 242 n.14,      A.3d      (2017).

———————————————